

# THE CALIFORNIA STATE UNIVERSITY
## OFFICE OF THE CHANCELLOR

BAKERSFIELD

CHANNEL ISLANDS

CHICO

DOMINGUEZ HILLS

EAST BAY

FRESNO

FULLERTON

HUMBOLDT

LONG BEACH

LOS ANGELES

MARITIME ACADEMY

MONTEREY BAY

NORTHRIDGE

POMONA

SACRAMENTO

SAN BERNARDINO

SAN DIEGO

SAN FRANCISCO

SAN JOSÉ

SAN LUIS OBISPO

SAN MARCOS

SONOMA

STANISLAUS

October 5, 2016

**M E M O R A N D U M**

**TO:**        CSU Presidents

**FROM:**    Timothy P. White
Chancellor

**SUBJECT:**    Systemwide *Policy* Prohibiting Discrimination, Harassment and
Retaliation, Sexual Misconduct, Dating and Domestic Violence, and
Stalking against Students and Systemwide *Procedure* for Addressing
Such Complaints by Students
Executive Order 1097 Revised October 5, 2016

Attached is a copy of Executive Order 1097 Revised October 5, 2016, which
supersedes Executive Order 1097 Revised June 23, 2015. This policy and procedure
applies systemwide, in conjunction with Executive Order 1095 Revised June 23, 2015
(and any superseding related executive orders).

These revisions incorporate amendments to the Fair Employment and Housing Act
(FEHA) Regulations. They are technical in nature, expand the use of gender neutral
language, or clarify existing policy and procedure. Complaints filed on or after the
effective date of this executive order shall be processed in accordance with the
*procedures* outlined herein, utilizing the *policy (and definitions)* set forth in the
executive order in place at the time of the alleged misconduct.

In accordance with policy of the California State University, the campus president has
the responsibility for implementing executive orders where applicable and for
maintaining the campus repository and index for all executive orders.

If you have questions regarding this executive order, please call systemwide Equal
Opportunity and Compliance at (562) 951-4400.

TPW/lh

Attachments

c:      CSU Office of the Chancellor Leadership
        Provosts
        Vice Presidents, Administration and Finance
        Vice Presidents, Student Affairs
        DHR Administrators
        Human Resources Officers
        Title IX Coordinators

**THE CALIFORNIA STATE UNIVERSITY**
**Office of the Chancellor**
**401 Golden Shore**
**Long Beach, California 90802-4210**
**(562) 951-4400**

**Executive Order:** 1097 Revised October 5, 2016

**Effective Date:** October 5, 2016

**Supersedes:** Executive Order 1097 Revised June 23, 2015

**Title:** Systemwide *Policy* Prohibiting Discrimination, Harassment and Retaliation, Sexual Misconduct, Dating and Domestic Violence, and Stalking against Students and Systemwide *Procedure* for Addressing Such Complaints by Students

## Article I.  Policy Statement

The California State University (CSU) is committed to maintaining an inclusive community that values diversity and fosters tolerance and mutual respect. We embrace and encourage our community differences in Age, Disability (physical and mental), Gender (or sex), Gender Identity (including transgender), Gender Expression, Genetic Information, Marital Status, Medical Condition, Nationality, Race or Ethnicity (including color or ancestry), Religion (or Religious Creed), Sexual Orientation, and Veteran or Military Status, and other characteristics that make our community unique.[1] All Students have the right to participate fully in CSU programs and activities free from Discrimination, Harassment, and Retaliation. The CSU prohibits Harassment of any kind, including Sexual Harassment, as well as Sexual Misconduct, Dating and Domestic Violence, and Stalking. Such misconduct violates University policy and may also violate state or federal law.

All sexual activity between members of the CSU community must be based on Affirmative Consent. Engaging in any sexual activity without first obtaining Affirmative Consent to the specific sexual activity is Sexual Misconduct and constitutes a violation of this policy, whether or not the sexual activity violates any civil or criminal law.

This policy is established in compliance with the California Equity in Higher Education Act, Title IX of the Education Amendments of 1972, the Violence Against Women Reauthorization Act of 2013 (which amends the Jeanne Clery Disclosure of Campus Security and Campus Crimes Statistics Act, commonly known as the Clery Act) (VAWA) under its Campus Sexual Violence Elimination Act provision (Campus SaVE Act), Title VI of the Civil Rights Act of 1964, Section 504 of the Rehabilitation Act of 1973, Title II of the Americans with Disabilities

---

[1] Key capitalized terms are defined at Article VI of this Executive Order. Please see that Article for the full definitions. Terms contained within this policy and procedure are intended to be gender neutral.

Act of 1990, and the Age Discrimination Act of 1975, among other applicable state and federal laws.

A.   **Prohibited Conduct.** The CSU prohibits:

1. Discrimination, including Harassment, because of any Protected Status: i.e., age, Disability (physical and mental), Gender (or sex), Gender Identity (including transgender), Gender Expression, Genetic Information, Marital Status, Medical Condition, Nationality, Race or Ethnicity (including color or ancestry), Religion (or Religious Creed), Sexual Orientation, sex stereotype, and Veteran or Military Status;

2. Retaliation for exercising rights under this policy, opposing Discrimination or Harassment because of a Protected Status, or for participating in any manner in any related investigation or proceeding;

3. Dating and Domestic Violence, and Stalking;

4. Sexual Misconduct of any kind, which includes sexual activity engaged in without Affirmative Consent; and,

5. Employees from entering into a consensual relationship with any Student over whom they exercise direct or otherwise significant academic, administrative, supervisory, evaluative, counseling, or extracurricular authority. See Article I. F.

The University shall respond promptly and effectively to all complaints of Discrimination, Harassment, Retaliation, Sexual Misconduct, Dating and Domestic Violence, and Stalking, and shall take appropriate action to prevent, correct, and discipline conduct that violates this policy. This Executive Order is intended to protect the rights and privacy of both the Complainant and the Respondent, as well as other involved individuals.

Employees and Students who are found to have violated this policy shall be subject to discipline commensurate to the violation. If Employee discipline is warranted, it shall be administered in a manner consistent with applicable collective bargaining agreements, CSU policies, and legal requirements. Student discipline shall be administered in accordance with 5 Cal. Code Regs. § 41301 and Executive Order 1098, or any superseding executive order.

B.   **Discrimination.** The CSU strives to be free of all forms of Discrimination, including Harassment, because of a Protected Status. It is CSU policy that no Student shall be excluded from participation in, or be denied the benefits of, any CSU program or activity because of any Protected Status.

C.   **Retaliation.** Retaliation against a Student for exercising any rights under this policy or for opposing Discrimination or Harassment because of a Protected Status, Sexual

Misconduct, Dating and Domestic Violence, and Stalking, or for participating in any manner in any policy-related investigation or proceeding is prohibited.

No victim or witness in related investigations or proceedings will be subject to disciplinary sanctions by the University for related violations of conduct policies occurring at or near the time of the incident unless the University determines the violation was egregious, including but not limited to plagiarism, cheating, academic dishonesty or conduct that places the health and safety of any other person at risk.

D.    **Dating and Domestic Violence, and Stalking.** The CSU prohibits Dating and Domestic Violence, and Stalking. Dating and Domestic Violence, and Stalking are often based on Gender. CSU prohibits all such misconduct whether or not it is based on Gender.

E.    **Sexual Misconduct.** All sexual activity between members of the CSU community must be based on Affirmative Consent. Engaging in any sexual activity without first obtaining Affirmative Consent to the specific activity constitutes Sexual Misconduct and is a violation of this policy, whether or not the conduct violates any civil or criminal law.

Sexual Misconduct is a form of Sexual Harassment and may create a sexually hostile environment that affects access to or participation in CSU programs and activities. CSU prohibits all such conduct whether or not it also amounts to Sexual Harassment.

Sexual activity includes but is not limited to kissing, touching intimate body parts, fondling, intercourse, penetration of any body part, and oral sex.

Affirmative Consent means an informed, affirmative, conscious, voluntary, and mutual agreement to engage in sexual activity. It is the responsibility of each person involved in the sexual activity to ensure Affirmative Consent has been obtained from the other participant(s) to engage in the sexual activity. Lack of protest or resistance does not mean Affirmative Consent, nor does silence mean Affirmative Consent. Affirmative Consent must be voluntary, and given without coercion, force, threats or intimidation.

The existence of a dating or social relationship between those involved, or the fact of past sexual activities between them, should never by itself be assumed to be an indicator of Affirmative Consent. A request for someone to use a condom or birth control does not, in and of itself, constitute Affirmative Consent.

Affirmative Consent can be withdrawn or revoked. Consent to one form of sexual activity (or one sexual act) does not constitute consent to other forms of sexual activity. Consent given to sexual activity on one occasion does not constitute consent on another occasion. There must always be mutual and affirmative consent to engage in sexual activity. Consent must be ongoing throughout a sexual activity and can be revoked at any time, including after penetration. Once consent is withdrawn or revoked, the sexual activity must stop immediately.

Affirmative Consent cannot be given by a person who is incapacitated. A person is unable to consent when asleep, unconscious or incapacitated due to the influence of drugs, alcohol or medication so that the person could not understand the fact, nature or extent of the sexual activity. A person is incapacitated if the person lacks the physical and/or mental ability to make informed, rational decisions.

Whether an intoxicated person (as a result of using alcohol or other drugs) is incapacitated depends on the extent to which the alcohol or other drugs impact the person's decision-making ability, awareness of consequences, and ability to make informed judgments. A person's own intoxication or incapacitation from drugs or alcohol does not diminish that person's responsibility to obtain Affirmative Consent before engaging in sexual activity.

A person with a medical or mental disability may also lack the capacity to give consent.

Sexual activity with a minor (a person under 18 years old) is not consensual, because a minor is considered incapable of giving consent due to age.

It shall not be a valid excuse that a person affirmatively consented to the sexual activity if the Respondent knew or reasonably should have known that the person was unable to consent to the sexual activity under any of the following circumstances:

- The person was asleep or unconscious;

- The person was incapacitated due to the influence of drugs, alcohol or medication, so that the person could not understand the fact, nature or extent of the sexual activity;

- The person was unable to communicate due to a mental or physical condition.

It shall not be a valid excuse that the Respondent believed that the person consented to the sexual activity under either of the following circumstances:

- The Respondent's belief in Affirmative Consent arose from the intoxication or recklessness of the Respondent;

- The Respondent did not take reasonable steps, in the circumstances known to the Respondent at the time, to ascertain whether the person affirmatively consented.

F.    **Consensual Relationships.** Consensual relationship means a sexual or romantic relationship between two persons who voluntarily enter into such a relationship. While sexual and/or romantic relationships between members of the University community may begin as consensual, they may evolve into situations that lead to Discrimination,

Harassment, Retaliation, Sexual Misconduct, Dating or Domestic Violence, or Stalking subject to this policy.

A CSU Employee shall not enter into a consensual relationship with a Student or Employee over whom that employee exercises or influences direct or otherwise significant academic, administrative, supervisory, evaluative, counseling, or extracurricular authority. In the event such a relationship already exists, each Campus shall develop a procedure to reassign such authority to avoid violations of this policy.

This prohibition does not limit the right of an Employee to make a recommendation on personnel matters concerning a family or household member where the right to make recommendations on such personnel matters is explicitly provided for in the applicable collective bargaining agreement or MPP/confidential personnel plan.

G.   **Reasonable Accommodations.** The CSU will provide reasonable accommodations to qualified individuals with a Disability. Reasonable accommodations will be determined by the Campus following an interactive process with those involved to identify the nature and extent of the restrictions and the appropriate accommodation.

H.   **Duty to Report.** Except as provided below, **any** Employee who knows or has reason to know of allegations or acts that violate this policy shall promptly inform the DHR Administrator or Title IX Coordinator. These Employees are required to disclose all information including the names of the Parties, **even where the person has requested anonymity.** The DHR Administrator or Title IX Coordinator will determine whether such confidentiality is appropriate given the circumstances of each such incident.

Employees Who Do Not Have A Duty to Report:

1.   The following Employees are **not** required to report **any** information about an incident of Discrimination, Harassment, Retaliation, Sexual Misconduct, Dating or Domestic Violence, or Stalking to the DHR Administrator or Title IX Coordinator:

   a. Physicians; psychotherapists; professional licensed counselors; licensed clinical social workers, and clergy who work on or off Campus, acting solely in those roles or capacities as part of their employment, in the provision of medical or mental health treatment or counseling (*and those who act under their supervision, including all individuals who work or volunteer in these centers and offices*); and

   b. Sexual assault and domestic violence counselors and advocates who work or volunteer on or off Campus in sexual assault centers, victim advocacy offices, women's centers, and health centers and who are acting solely in that role (*including those who act in that role under their supervision, along with non-professional counselors or advocates who work or volunteer in sexual assault centers, victim advocacy offices, women's centers, gender equity centers, or health centers*) in the provision of counseling or advocacy services.

    c.  A CSU employee/union representative is not required to report a possible violation of this Executive Order if the information is provided to the union representative, acting in that role, in a confidential setting by a union member seeking advice about a possible violation or representation in a matter within the scope of representation. However, CSU employee/union representatives are **strongly encouraged** to report the information to the DHR Administrator or Title IX Coordinator.

2.  University police are **not** required to report any **personally-identifiable information** about a victim of certain sex offenses,[2] **if the victim requests confidentiality of identity,** but must report all known facts of the incident, including the identity of the perpetrator (if known), to the Title IX Coordinator.

**EXCEPTIONS**: Under California law, any health practitioner employed in a health facility, clinic, physician's office, or local or state public health department or clinic is required to make a report to local law enforcement if medical services are provided for a ***physical condition*** to a patient/victim who the practitioner knows or reasonably suspects is suffering from: (1) a wound or physical injury inflicted by a firearm; or, (2) any wound or other physical injury inflicted upon a victim where the injury is the result of assaultive or abusive conduct.[3] This exception does ***not*** apply to sexual assault and domestic violence counselors and advocates. Health care practitioners should explain this limited exception to victims, if applicable.

Additionally, under California law, ***all*** physicians, psychotherapists, professional counselors, clergy, and sexual assault and domestic violence counselors and advocates are mandatory child abuse and neglect reporters, and are required to report incidents involving victims under 18 years of age to local law enforcement.[4] These professionals will explain this limited exception to victims, if applicable.

Finally, some or all of these professionals may also have reporting obligations under California law to: (1) local law enforcement in cases involving threats of immediate or imminent harm to self or others where disclosure of the information is necessary to prevent the threatened danger;[5] or, (2) to the court if compelled by court order or

---

[2] See Cal. Penal Code § 293; Cal. Gov. Code § 6254(f)(2)("The name of a victim of any crime defined by Section 220, 236.1, 261, 261.5, 262, 264, 264.1, 265, 266, 266a, 266b, 266c, 266e, 266f, 266j, 267, 269, 273a, 273d, 273.5, 285, 286, 288, 288a, 288.2, 288.3 (as added by Chapter 337 of the Statutes of 2006), 288.3 (as added by Section 6 of Proposition 83 of the November 7, 2006, statewide general election), 288.5, 288.7, 289, 422.6, 422.7, 422.75, 646.9, or 647.6 of the Penal Code may be withheld at the victim's request, or at the request of the victim's parent or guardian if the victim is a minor.")

[3] Assaultive or abusive conduct is defined to include a list of 24 criminal offenses, including Sexual Battery, incest, Rape, spousal Rape, abuse of a spouse or cohabitant, and any attempt to commit these crimes. See Cal. Penal Code §§ 11160-11163.2.

[4] See Cal. Penal Code §§ 11164-11174.3; see also CSU Executive Order 1083 or any superseding executive order.

[5] See Cal. Evid. Code § 1024.

subpoena in a criminal proceeding related to the Sexual Misconduct, Dating or Domestic Violence, or Stalking incident.[6] If applicable, these professionals will explain this limited exception to victims.

I.     **Grade Appeals.** Grade appeals that allege Discrimination, Harassment, Retaliation, Sexual Misconduct, Dating or Domestic Violence, or Stalking shall proceed concurrently: (i) under Campus procedures per Executive Order 1037 or any superseding executive order; and (ii) under this Executive Order. However, the Campus grade appeal procedure shall be placed in abeyance until such time as the Campus investigation and any appeal process under Article IV of this Executive Order have concluded. The final determination under this Executive Order regarding whether a violation occurred shall be provided to the Campus grade appeal committee. The committee shall be bound by such determination when considering the grade appeal request under Executive Order 1037.

**Article II.  Policy Implementation and Communication**

Each Campus president shall designate a DHR Administrator and Title IX Coordinator who shall be responsible for the implementation of and compliance with this policy. The DHR Administrator is responsible for the implementation of and compliance with this policy with respect to all Discrimination, Harassment and Retaliation matters except those involving Sex Discrimination, Sexual Harassment, Sexual Misconduct, Dating and Domestic Violence, and Stalking. The DHR Administrator is responsible for publicizing this Executive Order, developing Campus training policies consistent with this Executive Order, conducting training, and establishing an administrative structure consistent with this Executive Order that facilitates the prevention and elimination of Discrimination, Harassment, and Retaliation. The Title IX Coordinator is responsible for the implementation of, and compliance with this policy with respect to Sex Discrimination, Sexual Harassment, Sexual Misconduct, Dating and Domestic Violence, and Stalking. The Title IX Coordinator is responsible for publicizing this Executive Order, developing Campus training policies consistent with this Executive Order, conducting training, and establishing an administrative structure consistent with this Executive Order that facilitates the prevention and elimination of Sex Discrimination, Sexual Harassment, Sexual Misconduct, Dating and Domestic Violence, and Stalking. Each Campus shall make the contact information for the DHR Administrator and Title IX Coordinator available to all members of the Campus community as well as Third Parties. The contact information shall be updated as necessary.

The requirements for training to promote awareness of CSU policies against Sex Discrimination, Sexual Harassment, Sexual Misconduct, Dating and Domestic Violence, and Stalking are set forth in Executive Order 1095.

This Executive Order shall be made readily available and distributed on an annual basis to all Students and Employees utilizing multiple media for communication, including email, Student orientations and catalogs, new Employee orientations, Campus websites and publications, and

[6] See Cal. Evid. Code § 1035.4.

the webpages for the offices of Equity and Diversity, Student Affairs, Student Judicial Affairs, Disabled Student Services, Auxiliary Service Organizations, Academic Affairs, Extended Education, Athletics, Residential Life, and Human Resources.

## Article III.  Campus Procedure for Responding to Complaints

This procedure provides Students a process to address alleged violations of this policy by the CSU, a CSU Employee, another Student, or a Third Party. Whenever a Campus determines that the allegation(s) are outside the scope of this policy, the Campus shall promptly notify the Student in writing. All Complaints and related investigations against Respondents who are sworn University public safety officers shall be governed by this policy, the applicable collective bargaining agreement, and by the Public Safety Officers Procedural Bill of Rights Act (POBR). [7] The campus DHR Administrator/Title IX Coordinator shall work with the campus Chief of Police, or designee, to investigate Complaints against sworn public safety officers. Consultation with the Office of General Counsel is recommended.

The University will respond to all Complaints and will take appropriate action to prevent, correct, and discipline conduct that violates this policy. To report alleged violations, a Student may submit a formal written Complaint to the DHR Administrator (Discrimination, Harassment, and Retaliation) or Title IX Coordinator (Sex Discrimination, Sexual Harassment, Sexual Misconduct, Dating and Domestic Violence, and Stalking). The date of receipt shall be deemed to be the Complaint filing date. The DHR Administrator/Title IX Coordinator shall offer reasonable accommodations to Students who are unable to submit a Complaint because of a qualified Disability.

Complaints should be brought forward as soon as possible after the conduct occurs. While there is no stated timeframe for making a Complaint, prompt reporting will better enable the Campus to respond to the Complaint, determine the relevant issues, and provide an appropriate remedy and/or action. All incidents should be reported even if a significant amount of time has passed. However, delaying a report or Complaint may impede the ability to conduct an investigation or take appropriate remedial actions.

The Campus will respond to all reports of alleged violations of this policy, whether or not the report is submitted as a formal written Complaint. However, the response may be limited if information contained in the report is insufficient to verify violation(s) of this Executive Order.

A.     **Campus Early Resolution Process.** Complainants who believe they have experienced Discrimination, Harassment, Retaliation, Sexual Misconduct, Dating or Domestic Violence, or Stalking under this policy may initiate the Early Resolution process prior to, or instead of, filing a Complaint. The purpose of the Early Resolution process is to explore whether the Complainant's concern can be resolved by the Campus without an investigation.

---

[7] See Cal. Govt. Code §§3300-13.

This Executive Order neither prevents nor requires the use of the Early Resolution process. Under no circumstance shall a Complainant be required to use the Early Resolution process to address prohibited behaviors. It is not appropriate for a Complainant to be required to "work out the problem" directly or mediate with the Respondent. Mediation cannot be used, even on a voluntary basis, to resolve Sexual Misconduct, Dating or Domestic Violence, or Stalking Complaints. In other matters, where voluntary mediation is requested, no meeting between the Complainant and the Respondent should occur without involvement by appropriate Campus administrators, including the DHR Administrator or Title IX Coordinator.

Where the allegations involve Sexual Misconduct, Dating or Domestic Violence, or Stalking, the Complainant shall be advised to immediately file a Complaint under Article III, B.

1. **To initiate the Early Resolution Process.** The Complainant should contact the Campus DHR Administrator (Discrimination, Harassment, or Retaliation) or Title IX Coordinator (Sex Discrimination, Sexual Harassment, Sexual Misconduct, Dating and Domestic Violence and Stalking) who shall promptly meet with the Complainant to discuss his or her concern and possible resolutions as appropriate.

   Complainants shall be informed about the range of possible outcomes, including Interim Remedies or disciplinary actions that might be taken against the Respondent, and information about the procedures leading to such outcomes.

2. **Participation in the Early Resolution Process.** Participation is voluntary. It may include an inquiry into the facts, but does not include an investigation. Means for resolution shall be flexible. Resolution options include but are not limited to discussions with the Parties, a resolution facilitated by the DHR Administrator or Title IX Coordinator, separating the Parties, referring one or both of the Parties to counseling programs, an agreement between Campus and the Respondent regarding disciplinary action, conducting targeted preventive educational and training programs or providing Remedies to persons harmed by violations of this policy.

   The Campus shall attempt to resolve the Complainant's concern(s) quickly and effectively. The DHR Administrator or Title IX Coordinator shall meet with the Complainant, the Respondent, and any other persons or witnesses they may determine to be necessary.

3. **Final Early Resolution.** If resolution is reached, a written record of the resolution shall be documented and maintained in accordance with applicable Campus recordkeeping policies. The matter shall be considered closed.

   Where the Respondent is another Student, the DHR Administrator/Title IX Coordinator shall inform the Student Conduct Administrator of the outcome of the Early Resolution process, including any Interim Remedies afforded to the

Complainant. Where the Respondent is an Employee, Human Resources or Academic Affairs shall be informed as appropriate.

If resolution is not reached, the Campus shall promptly notify the Complainant and, where applicable, the Respondent in writing that the Early Resolution process is terminated, and the termination effective date. The DHR Administrator/Title IX Coordinator shall also determine whether the matter is appropriate for investigation, and so notify the parties in writing. The Complainant shall be provided written notification of the right to file a Complaint pursuant to Article III, B. 1.

4. **Confidentiality.** Other than consulting with their respective Advisors, both the Complainant and the Respondent shall keep the details of the Early Resolution process confidential until the process is concluded. If the matter is not resolved and an investigation is conducted, the Complainant and the Respondent shall maintain confidentiality until the conclusion of the Campus investigation and CO Appeal Review process, if any.

5. **Termination of Early Resolution Process.** The Complainant shall be notified that the Complainant or the Campus may at any time elect to terminate the Early Resolution process. In that event, the DHR Administrator/Title IX Coordinator shall promptly notify the Complainant and the Respondent in writing that the Early Resolution process has terminated, the effective date thereof, and inform the Complainant of the right to file a Complaint pursuant to Article III, B. 1. The DHR Administrator/Title IX Coordinator shall also determine whether the matter is appropriate for investigation, and so notify the parties in writing.

B. **Campus Investigation Process.** Campuses will investigate Complaints of Discrimination, Harassment, Retaliation, Sexual Misconduct, Dating or Domestic Violence, or Stalking unless an Early Resolution is reached, whether or not a formal written Complaint is submitted. The DHR Administrator/Title IX Coordinator will determine whether to open an investigation after making a preliminary inquiry into the allegations. An investigation may not be warranted where the reported information is insufficient. These determinations will be documented in writing by the DHR Administrator/Title IX Coordinator, and maintained in accordance with systemwide records retention policies.

In cases where the Complainant does not want to pursue an investigation, the DHR Administrator/Title IX Coordinator should inform the Complainant that the ability to take corrective action may be limited. The Campus may determine that circumstances warrant initiating an investigation even if a Complaint has not been filed and independent of the intent or wishes of the Complainant. In cases involving Sexual Misconduct, Dating or Domestic Violence, or Stalking, when determining whether to go forward with an investigation, the Title IX Coordinator should consider the seriousness of the allegation(s), the age of the Complainant, whether there have been other Complaints against the Respondent, and the risk to the Campus community if the Respondent's

alleged conduct remains unaddressed. These determinations will be documented in writing by the DHR Administrator/Title IX Coordinator, and maintained in accordance with systemwide records retention policies.

1. **Filing a Complaint.** Any Student may file a Complaint reporting Discrimination, Harassment, Retaliation, Sexual Misconduct, Dating or Domestic Violence, or Stalking under this policy subject to the following exceptions:

    a. Complaints of Student employees that arise out of their employment. Such Complaints shall be governed by Executive Order 1096, or any superseding executive order.

    b. Complaints by a Student about his/her academic adjustments and/or accommodations to a Campus's educational program related to his/her qualified Disability. Such inquiries and Complaints shall be directed to the Campus Director, Disabled Student Services (DSS), and shall be governed by CSU Coded Memorandum AA 2014-08, or any superseding policy.

    c. Complaints against a president shall be filed with the Chancellor's Office (CO). However, Complaints against a president shall be processed by the Campus if the president's role in the alleged incident was limited to a decision on a recommendation made by another administrator, and the president had no other substantial involvement in the matter.

    d. For Complaints against CO employees, the responsibilities identified in this Executive Order as those of the president are the responsibilities of the chancellor. Complaints that involve allegations against the chancellor or a member of the Board of Trustees shall be referred to the chair or vice chair of the Board and the CO Title IX Coordinator for processing and investigation.

2. **Complaint Requirements.** The Complainant may submit a written Complaint to the DHR Administrator or Title IX Coordinator. The date the Complaint is received in the appropriate office shall be deemed to be the Complaint filing date. The DHR Administrator/Title IX Coordinator shall offer reasonable accommodations to Complainants who are unable to submit a written Complaint because of a qualified Disability.

    The Complainant may complete the attached "CSU Student Complaint Form" or, in the alternative, submit a written signed statement containing the following information:

    a. The Complainant's full name, address (including email address) and telephone number(s);

     b.   The name of the Respondent and job title, position or Student status, if known;

     c.   The Protected Status that is the basis for any alleged Discrimination, Harassment, or Retaliation, the Respondent's activity that is the basis for the alleged Retaliation, or whether Dating or Domestic Violence, or Stalking is alleged;

     d.   A clear, concise statement of the facts that constitute the allegations including pertinent date(s) and sufficient information to identify any individuals who may provide relevant information during the course of any investigation;

     e.   A statement verifying that the information provided is true and accurate to the best of the Complainant's knowledge;

     f.   The term and year of the Complainant's most recent active academic status or the term and year in which the Complainant sought admission to the University;

     g.   The full name, address and telephone number of the Complainant's Advisor, if any;

     h.   The specific harm resulting from the allegations;

     i.   The specific remedy sought;

     j.   The Complainant's signature; and,

     k.   The date on which the Complaint is submitted.

3. **Intake interview.** The DHR Administrator or Title IX Coordinator shall meet with the Complainant as soon as possible, but no later than **10 Working Days** after the Complaint was received. The Complainant shall be available for and attend this meeting.

     a.   The meeting shall serve as the initial intake interview with the Complainant and will:

          (i)   Explain the investigation procedure and timelines and answer any questions about them;

          (ii)   Inform the Complainant of rights and options under this Executive Order, including the right to have an Advisor throughout the process;

      (iii)    Provide the opportunity for the Complainant to complete and sign a Complaint form, if not already done; and,

      (iv)    Discuss Interim Remedies, as appropriate.

b.    In cases alleging Sexual Misconduct, Dating or Domestic Violence, or Stalking, the Title IX Coordinator shall also:

      (i)    Inform the Complainant of the right to file a criminal complaint;

      (ii)    Offer to assist the Complainant with filing a criminal complaint;

      (iii)    Assure the Complainant that such filing will not significantly delay the Campus investigation;

      (iv)    Advise the Complainant of available resources such as the Campus police, Campus Sexual Assault Victim's Advocate, student health service center or psychological counseling center; and

      (v)    Provide *written* information, as directed under Executive Order 1095, to any Student who makes a report to the Campus of Sexual Misconduct, Dating or Domestic Violence, or Stalking.

c.    Prior to or during the initial interview with the Respondent, the DHR Administrator or Title IX Coordinator shall:

      (i)    Explain the investigation procedure and timelines and answer any questions about them;

      (ii)    Inform the Respondent of rights and options under this Executive Order, including the right to have an Advisor throughout the process;

      (iii)    Provide the Respondent with a copy of this Executive Order;

      (iv)    Provide the Respondent with a description of the Complainant's allegations against the Respondent;

      (v)    Provide the Respondent a full opportunity to respond to the allegations, including scheduling other meeting(s), accepting documentary evidence, and accepting Respondent's list of potential witnesses; and,

      (vi)    Discuss any Interim Remedies, as appropriate.

4. **Advisor.** The Complainant and the Respondent may elect to be accompanied by an Advisor to any meeting or interview regarding the Complaint. (See definition in Article VI.)

5. **Confidentiality.** Information regarding the Complaint may be shared on a "need to know" basis with other Campus Employees, and with law enforcement (with the Complainant's written consent), except for some limited exceptions. (See Executive Order 1095.) The DHR Administrator and/or Title IX Coordinator shall endeavor to honor any request for confidentiality; however, the DHR Administrator and/or Title IX Coordinator shall also weigh requests for confidentiality against the University's duty to provide a safe and nondiscriminatory environment for all members of the Campus community. **Confidentiality, therefore, cannot be ensured.**

   The Title IX Coordinator receives all Complainant requests for confidentiality involving cases of Sexual Misconduct, Dating or Domestic Violence, or Stalking, and determines if the request can be honored under the facts and circumstances of the particular case. (See Executive Order 1095.)

6. **Complaint Accepted for Investigation.** The DHR Administrator or Title IX Coordinator will review all written Complaints and the information received during the intake interview with the Complainant. If the DHR Administrator or Title IX Coordinator determines that the Complaint falls within the scope of this Executive Order, the Complainant will be notified within **10 Working Days** that the Complaint has been accepted for investigation and the timeline for completion of the investigation.

   If the DHR Administrator or Title IX Coordinator determines the Complainant has failed to state a Complaint within the scope of this Executive Order, the Complainant will be provided with written notice of this determination within **10 Working Days**. The DHR Administrator or Title IX Coordinator will also inform the Complainant that if additional information is provided, the Complaint will be reviewed again. The DHR Administrator or Title IX Coordinator will maintain a record of the Complaint and the reasons the Complaint was deemed not within the scope of this Executive Order.

   The DHR Administrator or Title IX Coordinator shall determine whether the Complaint should be processed through another Campus office or University procedure available to the Complainant. If appropriate, the DHR Administrator or Title IX Coordinator shall direct the Complainant to that procedure as soon as possible.

7. **Investigation Procedure.** The DHR Administrator or Title IX Coordinator shall promptly investigate the Complaint or assign this task to another Investigator on a case-by-case basis. If assigned to another Investigator, the DHR Administrator or Title IX Coordinator shall monitor, supervise, and oversee all such delegated tasks,

including reviewing all investigation draft reports before they are final to ensure that the investigation was sufficient, appropriate, impartial, and in compliance with this Executive Order.

The Complainant and the Respondent shall have equal opportunities to present relevant witnesses and evidence in connection with the investigation. Upon inquiry, the Complainant and Respondent shall be advised of the status of the investigation.

Before reaching a final conclusion or issuing a final investigation report, the Investigator shall have: a) advised the Parties, or have offered to do so, verbally or in writing, of any evidence upon which the findings will be based; and, b) given the Parties an opportunity to respond to the evidence, including presenting further relevant evidence, information or arguments that could affect the outcome. The Investigator will not reach a final conclusion or issue an investigation report until giving careful consideration to any such relevant evidence, information or arguments provided by the Parties. The Investigator retains discretion and authority to determine relevance.

The investigation shall be completed no later than **60 Working Days** after the intake interview, unless the timeline has been extended pursuant to Article V. E. The timeline should not be extended for a period longer than an additional **30 Working Days** from the original due date.

On occasion, a criminal investigation may be initiated by a law enforcement agency over the same allegations that are reported in a Complaint filed under this policy. A pending (Campus or local) police investigation is a separate investigation and it does not relieve a Campus of its responsibility to timely investigate Complaints under this policy. Thus, a Campus may not wait until the conclusion of a police investigation to commence its own investigation. Although it may be necessary to temporarily delay the investigation while the police are gathering evidence, once notified that the police have completed the fact gathering portion of their investigation, the Campus must promptly resume and complete its own investigation. In cases involving Sexual Misconduct, Dating or Domestic Violence, or Stalking, see the "Coordination with Criminal Investigations and Proceedings" section of Executive Order 1095.

8. **Investigation Report.** Within the investigation period stated above, the Investigator shall prepare an investigation report. The report shall include a summary of the allegations, the investigation process, the Preponderance of the Evidence standard, a detailed description of the evidence considered, and appropriate findings. Relevant exhibits and documents, if any, shall be attached to the written report. The report shall be promptly provided to the DHR Administrator or Title IX Coordinator, if applicable. The DHR Administrator or Title IX Coordinator shall review the investigation report to assure compliance with this Executive Order before proceeding further.

9. **Notice of Investigation Outcome.** Within **10 Working Days** of issuance of the final investigation report, the DHR Administrator or Title IX Coordinator shall notify the Complainant and Respondent in writing of the outcome of the investigation. The notice shall include a summary of the allegations, the investigative process, the Preponderance of the Evidence standard, the evidence considered, the findings of fact, a determination as to whether this Executive Order was violated, and if so, any Remedies to be afforded to the Complainant (such as an order that the Accused not contact the Complainant). The notice shall advise the Complainant and Respondent of their right to file an appeal under this Executive order and to request a copy of the final investigation report with exhibits/attachments, if any, redacted as appropriate. The Notice shall be delivered to the Parties in a manner which guarantees delivery within **2 Working Days** (email delivery is acceptable). Where a Complaint is made against another Student and this Executive Order is found to have been violated, the DHR Administrator or Title IX Coordinator shall also notify the Campus Student Conduct Administrator of the investigation outcome, and provide a copy of the investigation report. Where the Respondent is an Employee, Human Resources or Academic/Faculty Affairs shall be notified and provided a copy of the investigation report.

## Article IV.  Appeal Review - Office of the Chancellor (CO)

A.     **Filing an Appeal to the CO.** Any Complainant or Respondent who is not satisfied with a Campus investigation outcome may file an appeal with the CO no later than **10 Working Days** after the date of the Notice of Investigation Outcome.

B.     **Written Appeal.** The appeal shall be in writing and shall be based only on one or more of the appeal issues listed below:

1.   The investigation outcome is unsupported by the evidence, based on the Preponderance of the Evidence standard;

2.   Prejudicial procedural errors impacted the investigation outcome to such a degree that the investigation did not comply with this Executive Order; or

3.   New evidence not available at the time of the investigation.

C.     **Issues and Evidence on Appeal.** The issues and evidence raised on appeal shall be limited to those raised and identified during the investigation, unless new evidence becomes available after the Campus investigation process and is made part of the appeal by the appealing party. The CO may conduct an interview, at the CO's discretion, with the appealing party to clarify the written appeal. Appeals shall be addressed to:

Executive Order 1097
Revised October 5, 2016

Equal Opportunity and Whistleblower Compliance Unit
Systemwide Human Resources
Office of the Chancellor
401 Golden Shore, 4th Floor
Long Beach, California 90802
**eo-wbappeals@calstate.edu**

**D.** **Acknowledgement of Appeal.** The CO shall provide prompt written acknowledgement of the receipt of the appeal to the appealing party, and will provide written notification of the appeal to the other party and the Campus DHR Administrator or Title IX Coordinator.

**E.** **Reasonable Accommodation.** The CO will provide reasonable accommodation(s) to any party or witness in the appeal process with a qualified Disability upon request by the person needing the accommodation. A reasonable accommodation may include an extension under these procedures. The timeframe for the CO Appeal Response will automatically be adjusted for the time needed, if any, to provide reasonable accommodation(s).

**F.** **Scope of CO Review.** The CO review will not involve a new investigation by the CO and will not consider evidence that was not introduced during the Campus investigation, unless the new evidence was not available at the time of the Campus investigation process. The CO may make reasonable inquiries to determine if the new evidence could have affected the investigation determination. If the CO review determines the investigation should be reopened to cure any defects in the investigation and/or consider new evidence introduced for the first time on appeal (that could have affected the investigation determination), the investigation will be remanded back to the Campus and the investigation reopened at the Campus level.

**G.** **Reopening a Campus Investigation.** The CO will return the matter to the Campus and will specify in writing the timeline by which a reopened investigation must be completed. The CO will notify the Parties of the reopening of the investigation and the timeline for completion of the reopened investigation. The Campus will complete the reopened investigation and provide the CO with an amended investigation report. The Campus will also provide the Parties with amended Notices of Investigation Outcome, and such Notices will provide the Parties the opportunity to appeal any new or amended findings, in accordance with this Executive Order. Upon receipt of the amended investigation report, the CO will contact the appealing party to determine whether that party wishes to continue with the appeal.

**H.** **Timeline.** The CO shall respond to the appealing party no later than **30 Working Days** after receipt of the written appeal unless the timeline has been extended as specified in Article V, E. below.

**I.** **CO Appeal Response**. The CO Appeal Response shall include a summary of the issues raised on appeal, a summary of the evidence considered, the Preponderance of the

Evidence standard, and the determination(s) reached regarding the issue(s) identified within the written appeal. A copy of the final CO Appeal Response shall be forwarded to the Complainant and Respondent, as well as the Campus DHR Administrator or Title IX Coordinator.

The CO Appeal Response is final and concludes the Complaint and CO review process under this Executive Order.

**Article V.  General Provisions for Campus Investigation/CO Appeal Review**

A.      **Impartial Investigations**. All investigations and reviews shall be conducted impartially and in good faith.

B.      **Cooperation in an Investigation**. Students and Employees are required to cooperate with the investigation and other processes set forth in this Executive Order, including but not limited to, attending meetings, being forthright and honest during the process, and keeping confidential the existence and details of the investigation/review. If a Complainant and/or Respondent refuse to cooperate, the CSU may draw all reasonable inferences and conclusions on the basis of all available evidence and conclude the investigation/review.

C.      **False Allegations Prohibited.** A Complainant shall proceed with a Complaint in good faith. A Complainant who knowingly and intentionally files a false Complaint or any individual who is determined to have provided false statements or information during the investigation/appeal review shall be subject to discipline. Such disciplinary action shall not be deemed to be Retaliation.

D.      **Input into the Investigation**. Both the Complainant and Respondent shall have the right to identify witnesses and other evidence for consideration; however, the CSU shall decide what evidence is relevant and significant to the issues raised.

E.      **Timelines and Extensions.** The timeline for the procedures contained within this Executive Order may be extended for any reason deemed to be legitimate by the Campus Investigator/CO Appeal reviewer or by mutual agreement of the Parties. The timelines stated within this Executive Order will be automatically adjusted for a reasonable time period that should not exceed an additional **30 Working Days** for a Campus investigation or an additional **30 Working Days** for a reopened Campus investigation under Article IV. The Complainant and Respondent shall receive written notification of any period of extension.

F.      **Delivery.** When submitting a Complaint or issuing any notices required by this Executive Order, personal delivery, overnight delivery services, electronic mail, or certified mail may be used. If personal delivery is used, a proof of service shall be prepared attesting to the calendar date of delivery, which will establish the date of filing or response. If certified mail delivery is used, the postmark shall establish the date of filing or response.

Electronic communications must be sent to the designated CSU or Campus e-mail address unless the intended recipient has specified a different address. Electronic communications will be deemed received on the date sent.

G. **Investigation Not Warranted**. In the event that a Campus determines an investigation is not warranted, the reasons for that decision shall be reduced to writing and retained by the Campus according to appropriate record retention policies.

H. **Information Requests.** Where it is necessary for the Complainant or Respondent to have access to specific information for the purpose of filing a Complaint or CO Appeal, the Complainant or Respondent shall make a written request for such information to the Campus. The Complainant or Respondent shall have access to information within the policies, procedures and laws governing confidentiality and privacy that are relevant to any issue raised in the Complaint. This provision does not authorize a Complainant or Respondent access to the personnel files of another without the written consent of that person.

## Article VI.  Definitions

For purposes of this Executive Order, the following definitions apply:

A. **Adverse Action** means an action that has a substantial and material adverse effect on the Complainant's ability to participate in a University program or activity free from Discrimination, Harassment or Retaliation. Minor or trivial actions or conduct not reasonably likely to do more than anger or upset a Complainant does not constitute an Adverse Action.

B. **Advisor**: The Complainant and the Respondent may each elect to be accompanied by an Advisor to any meeting or interview regarding the allegations. The Advisor may be anyone, including a union representative from the Complainant's or Respondent's collective bargaining unit, an attorney, or, in the case of the Complainant, a Sexual Assault Victim's Advocate, provided the Advisor is not a person with information relevant to the allegations who may be interviewed by the Investigator during the investigation. The Advisor may not answer questions regarding the subject matter of the investigation for the Complainant or the Respondent.  However, the Advisor may observe and consult with the Complainant or Respondent and take appropriate action to ensure that the investigation does not violate applicable laws, policies, or collective bargaining agreements.

C. **Affirmative Consent** means an informed, affirmative, conscious, voluntary, and mutual agreement to engage in sexual activity. It is the responsibility of each person involved in the sexual activity to ensure that Affirmative Consent has been obtained from the other participant(s) to engage in the sexual activity. Lack of protest or resistance does not mean consent nor does silence mean consent.

Affirmative Consent can be withdrawn or revoked. Affirmative Consent cannot be given by a person who is incapacitated.

A person with a medical or mental Disability may also lack the capacity to give consent.

Sexual activity with a minor (under 18 years old) is never consensual because a minor is considered incapable of giving legal consent due to age.

See Article I, E. for more information.

D.      **Age,** with respect to employment discrimination, refers to the chronological age of any individual who has reached his or her 40th birthday.[8] With respect to discrimination in non-employment programs and activities, Age means how old a person is, or the number of years from the date of a person's birth.[9] Age based stereotype refers to generalized opinions about matters including the qualifications, job performance, health, work habits, and productivity of individuals over forty.

Age is a Protected Status.

E.      **Calendar Days** are defined as Monday through Sunday and include official holidays.

F.      **California State University (CSU)** means the 23 Campus system of the California State University, including the CO.

G.      **Campus or University** means any of the 23 Campuses of the CSU or the CO.

H.      **CO Appeal Response** refers to the decision provided to the Complainant and the Respondent upon completion of the appeal process provided under Article IV.

I.      **Complainant** means an individual who is eligible to file a Complaint or to report a violation of this policy. See Article III. B. 1 for a description of those eligible to file a Complaint. It also includes any person who is reported to have experienced a violation of this policy in cases where some other person has made a report on that person's behalf. A Complainant may also be referred to as a party to the Complaint.

J.      **Complaint** means a report of a violation of this policy or a written communication that complies with Article III. B. 2 alleging Discrimination, Harassment, Retaliation, Sexual Misconduct, Dating or Domestic Violence, or Stalking, against the CSU, an Employee, another Student, or a Third Party.

---

[8] See Cal. Gov. Code § 12926(b).
[9] See 34 C.F.R. 110.3

K.   **Dating Violence** is abuse committed by a person who is or has been in a social or dating relationship of a romantic or intimate nature with the victim.[10] This may include someone the victim just met; i.e., at a party, introduced through a friend, or on a social networking website. For purposes of this definition, "abuse" means intentionally or recklessly causing or attempting to cause bodily injury or placing another person in reasonable apprehension of imminent serious bodily injury to self or another. Abuse does not include non-physical, emotional distress or injury.

L.   **DHR (Discrimination, Harassment, and Retaliation) Administrator** means the Management Personnel Plan (MPP) Employee at each Campus who is designated to administer this Executive Order and coordinate compliance with the laws prohibiting Discrimination, Harassment and Retaliation. The DHR Administrator may delegate tasks to one or more designees, provided that any designee shall be a MPP Employee or an external consultant, and the DHR Administrator retains overall responsibility and authority. **MPP Employee** means an employee who has been designated as a "management" or "supervisory" employee under the provisions of the Higher Education Employer-Employee Relations Act.[11] The Campus president may assign the roles of the DHR Administrator and Title IX Coordinator to the same person. The names of, and contact information for the DHR Administrator and Title IX Coordinator shall be made readily available to the Campus community and Third Parties as described in Article II.

M.   **Disability,** as defined in California Education Code §66260.5, Government Code § 12926 and the federal Americans with Disabilities Act (ADA), 2008 Amendments, means:

1.   Having a physical or mental condition that limits a major life activity. "Limits" means making the achievement of a major life activity difficult. "Limits" is determined without regard to mitigating measures such as medications, assistive devices, prosthetics, or reasonable accommodations, unless the mitigating measure itself limits a major life activity. A "major life activity" is broadly construed and includes physical, mental, and social activities (such as walking, talking, seeing, hearing) and working; or

2.   Having a known history of a qualifying impairment; or

3.   Being regarded or treated as having or having had a qualifying impairment; or

4.   Being regarded or treated as having or having had such an impairment that has no presently disabling effects but may become a qualifying impairment in the future.

Disability includes HIV and AIDS. Disability is a Protected Status.

N.   **Discipline** means any disciplinary action taken to correct a violation of the prohibitions against Discrimination, Harassment, Retaliation, Sexual Misconduct, Dating and Domestic Violence, and Stalking set forth in this Executive Order. Discipline for

---

[10] See Cal. Penal Code § 13700 (b).
[11] See Cal. Code Regs. Title 5 § 42720 et seq.

Employees includes but is not limited to suspension, demotion, and termination of employment. Discipline for Students includes but is not limited to probation, suspension, and expulsion. Suspension of one academic year or more, expulsion, withdrawal in lieu of suspension or expulsion, and withdrawal with pending misconduct investigation or disciplinary proceeding shall be entered on the Student's transcript permanently without exception; this requirement cannot be waived in connection with any settlement agreement. See the definition of Remedies below.

O.    **Discrimination** means Adverse Action taken against a Student by the CSU, a CSU employee, or another Student because of a Protected Status.

P.    **Domestic Violence** is abuse committed against someone who is a current or former spouse; current or former cohabitant; someone with whom the Respondent has a child; someone with whom the Respondent has or had a dating or engagement relationship; or a person similarly situated under California domestic or family violence law. Cohabitant means two unrelated persons living together for a substantial period of time, resulting in some permanency of relationship. It does not include roommates who do not have a romantic, intimate, or sexual relationship.  Factors that may determine whether persons are cohabiting include, but are not limited to: (1) sexual relations between the Parties while sharing the same living quarters; (2) sharing of income or expenses; (3) joint use or ownership of property; (4) whether the Parties hold themselves out as spouses; (5) the continuity of the relationship; and, (6) the length of the relationship. For purposes of this definition, "abuse" means intentionally or recklessly causing or attempting to cause bodily injury or placing another person in reasonable apprehension of imminent serious bodily injury to self, or another.[12] Abuse does not include non-physical, emotional distress or injury.

Q.    **Employee** means a person legally holding a position in the CSU. This term includes full-time, part-time, permanent, tenured, probationary, temporary, intermittent, casual, and per-diem positions. This term does not include auxiliary or foundation Employees or other Third Parties.[13]

R.    **Gender** means sex, and includes Gender Identity, Gender Expression, and transgender. It also includes sex stereotyping. [14]

Sex includes, but is not limited to pregnancy, childbirth, breastfeeding or any related medical conditions. [15]

Gender Identity means a person's identification as male, female, a gender different from the person's sex at birth or transgender.

---

[12] See Cal. Penal Code § 13700(b) and Cal. Family Code § 6211.
[13] See Cal. Code Regs. Title 5 § 42700(h).
[14] See Cal. Educ. Code § 66260.7 and Cal. Gov. Code §12926(r).
[15] See Cal. Gov. Code §12926®; 34 C.F.R. 106.4

Gender Expression means a person's gender-related appearance or behavior whether or not stereotypically associated with the person's assigned sex at birth.

Sex stereotype means an assumption about a person's appearance or behavior or about an individual's ability or inability to perform certain kinds of work based on a myth, social expectation, or generalization about the individual's sex.

Transgender is a general term that refers to a person whose gender identity differs from the person's sex at birth. A transgender person may or may not have a gender expression that is different from the social expectation of the sex assigned at birth. A transgender person may or may not identify as transsexual.

Gender is a Protected Status.

S. **Genetic Information** means[16]:

- The Student's genetic tests.

- The genetic tests of the Student's family members.

- The manifestation of a disease or disorder in the Student's family members.

- Any request for, or receipt of genetic services, or participation in clinical research that includes genetic services, by a Student or any Student's family member.

- Genetic Information does not include information about any Student's sex or age.

Genetic Information is a Protected Status.

T. **Harassment** means unwelcome conduct, based on the Complainant's Protected Status, that is sufficiently severe, persistent or pervasive that its effect, whether or not intended, could be considered by a reasonable person in the shoes of the Complainant, and is in fact considered by the Complainant, as limiting her/his ability to participate in or benefit from the services, activities or opportunities offered by the University.

U. **Investigator** means the person tasked by a Campus with investigating a Complaint. All Investigators shall receive annual training regarding such issues as the laws governing Discrimination, Harassment and Retaliation; Title IX and VAWA/Campus SaVE Act; as well as other related state and federal laws prohibiting Discrimination, Harassment and Retaliation based on Gender or Sex, including Sex Discrimination, Sexual Harassment, Sexual Misconduct, Dating and Domestic Violence, and Stalking; Complainant, Respondent, Employee, and witness privacy rights; and the Family Educational Rights

---

[16] See Cal. Gov. Code §12926(g).

and Privacy Act of 1974 (FERPA). For matters involving Sex Discrimination, Sexual Harassment, Sexual Misconduct, Dating or Domestic Violence or Stalking, the Investigator shall also receive annual training on how to conduct an investigation process that protects the safety of the Complainant(s) and the University community. (See also Executive Order 1095 regarding required training for Sexual Harassment and Sexual Misconduct investigations.)

If delegated, the DHR Administrator or the Title IX Coordinator (for Complaints alleging Sex Discrimination, Sexual Harassment, Sexual Misconduct, Dating or Domestic Violence, or Stalking) shall monitor, supervise, and oversee the investigation to ensure that it is conducted in accordance with the standards, procedures and timelines set forth in this policy.

The Investigator shall not be within the administrative control or authority of any Respondent CSU Employee. The Investigator may be the DHR Administrator, the Title IX Coordinator, or their designee, provided that any designee shall be an MPP Employee or an external consultant.

V.  **Marital Status** means an individual's state of marriage, non-marriage, divorce or dissolution, separation, widowhood, annulment, or other marital state.[17] Marital Status is a Protected Status.

W.  **Medical Condition** means either of the following:

1.  Any health impairment related to or associated with a diagnosis of cancer or a record or history of cancer; or

2.  Genetic characteristics. For purposes of this section, "genetic characteristics" means either of the following:

    a.  Any scientifically or medically identifiable gene or chromosome, or combination or alteration thereof, that is known to be a cause of a disease or disorder in a person or offspring, or that is determined to be associated with a statistically increased risk of development of a disease or disorder, and that is presently not associated with any symptoms of any disease or disorder; or

    b.  Inherited characteristics that may derive from the individual or family member, that are known to be a cause of a disease or disorder in a person or offspring, or that are determined to be associated with a statistically increased risk of development of a disease or disorder, and that are presently not associated with any symptoms of any disease or disorder.[18]

---

[17] See 2 Cal. Code Regs §11053.
[18] See Cal. Govt. Code § 12926 (i).

Medical Condition is a Protected Status.

**X.**   **Nationality** includes citizenship, country of origin, and national origin. It also includes language use restrictions and holding or presenting a driver's license issued under section 12801.9 of the Vehicle Code.

Nationality is a Protected Status.[19]

**Y.**   **Parties** to a Complaint are the Complainant(s) and the Respondent(s).

**Z.**   **Preponderance of the Evidence** means the greater weight of the evidence; i.e., that the evidence on one side outweighs, preponderates over, or is more than, the evidence on the other side. The Preponderance of the Evidence is the applicable standard for demonstrating facts and reaching conclusions in an investigation conducted pursuant to this Executive Order.

**AA.**   **Protected Status** includes Age, Disability (physical or mental), Gender (or sex), Genetic Information, Gender Identity (including transgender), Gender Expression, Marital Status, Medical Condition, Nationality, Race or Ethnicity (including color or ancestry), Religion or Religious Creed, Sexual Orientation, and Veteran or Military Status.

**BB.**   **Race or Ethnicity** includes ancestry, color, ethnic group identification, and ethnic background.

Race or Ethnicity is a Protected Status.[20]

**CC.**   **Religion** or Religious Creed and includes all aspects of religious belief, observance, and practice, including religious dress and grooming practices, and includes agnosticism and atheism. Religious dress and grooming practices, such as wearing religious clothing, head or face covering, jewelry, and artifacts, are part of a Complainant's religious observance or belief.[21]

**Religion** or Religious Creed is a Protected Status.

**DD.**   **Remedies** mean actions taken to correct allegations and/or reported violations of Discrimination, Harassment, Retaliation, Sexual Misconduct, Dating or Domestic Violence or Stalking as set forth in this Executive Order. Remedies can include Discipline or other corrective action.

**Interim Remedies** shall be offered prior to the conclusion of an investigation in order to immediately stop any wrong-doing and/or reduce or eliminate any negative impact, when

---

[19] See Cal. Educ. Code § 66261.3.
[20] See Cal. Educ. Code § 66261.7.
[21] See Cal. Educ. Code § 66262.

appropriate. Persons reporting that they have been the victim of Sex Discrimination, Sexual Harassment, Sexual Misconduct, Dating or Domestic Violence or Stalking must be provided reasonable and available Interim Remedies, if requested, regardless of whether the person chooses to report the conduct to Campus police or local law enforcement, and regardless of whether an investigation is conducted under this Executive Order. Examples may include offering the option of psychological counseling services, changes to academic or living situations, completing a course and/or courses on-line (if otherwise appropriate), academic tutoring, arranging for the re-taking of a class or withdrawal from a class without penalty, and/or any measure as appropriate to stop further alleged harm until an investigation is concluded or a resolution is reached. The Title IX Coordinator shall assist and provide the Complainant with reasonable Remedies as requested throughout the reporting, investigation, appeal, and disciplinary processes, and thereafter.

EE.   **Respondent** means the CSU, a CSU Employee, another Student, or a Third Party who is alleged to have violated this Executive Order.

FF.   **Retaliation** means Adverse Action taken against a Student because the Student has or is believed to have:

1.   Exercised rights under this Executive Order;

2.   Reported or opposed conduct which was reasonably and in good faith believed to be in violation of this Executive Order;

3.   Assisted or participated in a policy-related investigation/proceeding regardless of whether the Complaint was substantiated; or,

4.   Assisted someone in reporting or opposing a violation of this Executive Order, or assisted someone in reporting or opposing Retaliation under this Executive Order.

Retaliation may occur whether or not there is a power or authority differential between the individuals involved.

GG.   **Sexual Assault Victim's Advocate** refers to Employees or third party professionals appointed to support Complainants reporting Sexual Misconduct. They must be certified and have received specialized training to provide advice and assistance, including but not limited to the provision of information about available options in the Complaint, law enforcement, legal, and medical processes, and with emotional and decision making support. Sexual Assault Victim's Advocates may serve as the Complainant's Advisor and assist in seeking services. They are committed to maintain the highest possible level of confidentiality permissible under state and federal law in their communications with the persons they assist.[22] Sexual Assault Victim's Advocates are appointed based on

---

[22] See Cal. Evid. Code §§ 1035.2 and 1035.4.

experience and demonstrated ability to effectively provide services to victims/survivors/Complainants. See Executive Order 1095 for more detailed information.

HH.   **Sexual Harassment**, a form of Sex Discrimination, is unwelcome verbal, nonverbal or physical conduct of a sexual nature that includes but is not limited to sexual advances, requests for sexual favors, and any other conduct of a sexual nature where:

   1. Submission to, or rejection of, the conduct is explicitly or implicitly used as the basis for any decision affecting a Complainant's academic status or progress, or access to benefits and services, honors, programs, or activities available at or through the University; **or**

   2. The conduct is sufficiently severe, persistent or pervasive that its effect, whether or not intended, could be considered by a reasonable person in the shoes of the Complainant, and is in fact considered by the Complainant, as limiting his or her ability to participate in or benefit from the services, activities or opportunities offered by the University; **or**

   3. The conduct is sufficiently severe, persistent or pervasive that its effect, whether or not intended, could be considered by a reasonable person in the shoes of the Complainant, and is in fact considered by the Complainant, as creating an intimidating, hostile or offensive environment.

   Sexual Harassment could include being forced to engage in unwanted sexual contact as a condition of membership in a student organization; being subjected to video exploitation or a campaign of sexually explicit graffiti; or frequently being exposed to unwanted images of a sexual nature in a classroom that are unrelated to the coursework.

   Sexual Harassment also includes acts of verbal, non-verbal or physical aggression, intimidation or hostility based on Gender or sex-stereotyping, even if those acts do not involve conduct of a sexual nature.

   This policy covers unwelcome conduct of a sexual nature. While romantic, sexual, intimate, personal or social relationships between members of the University community may begin as consensual, they may evolve into situations that lead to Sexual Harassment or Sexual Misconduct, including Dating or Domestic Violence, or Stalking, subject to this policy.

   Claiming that the conduct was not motivated by sexual desire is not a defense to a complaint of harassment based on Gender.

II.   **Sexual Misconduct**:  All sexual activity between members of the CSU community must be based on Affirmative Consent. Engaging in any sexual activity without first obtaining

Affirmative Consent to the specific activity is Sexual Misconduct, whether or not the conduct violates any civil or criminal law.

Sexual activity includes, but is not limited to, kissing, touching intimate body parts, fondling, intercourse, penetration of any body part, and oral sex. It also includes any unwelcome physical sexual acts, such as unwelcome sexual touching, Sexual Assault, Sexual Battery, Rape, and Dating Violence. When based on Gender, Domestic Violence or Stalking also constitute Sexual Misconduct. Sexual Misconduct may include using physical force, violence, threat, or intimidation, ignoring the objections of the other person, causing the other person's intoxication or incapacitation through the use of drugs or alcohol, or taking advantage of the other person's incapacitation (including voluntary intoxication) to engage in sexual activity. Men as well as women can be victims of these forms of Sexual Misconduct. Sexual activity with a minor is never consensual when the Complainant is under 18 years old, because the minor is considered incapable of giving legal consent due to age.

1. **Sexual Assault** is a form of Sexual Misconduct and is an attempt, coupled with the ability, to commit a violent injury on the person of another because of that person's Gender or sex.[23]

2. **Sexual Battery** is a form of Sexual Misconduct and is any willful and unlawful use of force or violence upon the person of another because of that person's Gender or sex as well as touching an intimate part of another person against that person's will and for the purpose of sexual arousal, gratification, or abuse.[24]

3. **Rape** is a form of Sexual Misconduct and is non-consensual sexual intercourse that may also involve the use of threat of force, violence, or immediate and unlawful bodily injury or threats of future retaliation and duress. Any sexual penetration, however slight, is sufficient to constitute Rape. Sexual acts including intercourse are considered non-consensual when a person is incapable of giving consent because s/he is incapacitated from alcohol and/or drugs, is under 18 years old, or if a mental disorder or developmental or physical Disability renders a person incapable of giving consent. The Respondent's relationship to the person (such as family member, spouse, friend, acquaintance or stranger) is irrelevant. (See complete definition of Affirmative Consent above.)[25]

4. **Acquaintance Rape** is a form of Sexual Misconduct committed by an individual known to the victim. This includes a person the victim may have just met; i.e., at a party, introduced through a friend, or on a social networking website. (See above for definition of Rape.)

---

[23] See Cal. Penal Code § 240.
[24] See Cal. Penal Code § 242.
[25] See Cal. Penal Code §§ 261-263.

JJ.    **Sexual Orientation** means one's preference in sexual partners and includes
       heterosexuality, homosexuality or bisexuality.[26]

       Sexual Orientation is a Protected Status

KK.    **Stalking** means engaging in a repeated Course of Conduct directed at a specific person
       that would cause a Reasonable Person to fear for the safety of self or others' safety or to
       suffer Substantial Emotional Distress.[27] For purposes of this definition:

       1.   **Course of Conduct** means two or more acts, including but not limited to, acts in
            which the stalker directly, indirectly, or through Third Parties, by any action, method,
            device, or means, follows, monitors, observes, surveils, threatens, or communicates to
            or about a person, or interferes with a person's property;

       2.   **Reasonable Person** means a reasonable person under similar circumstances and with
            the same Protected Status(es) as the Complainant;

       3.   **Substantial Emotional Distress** means significant mental suffering or anguish that
            may, but does not necessarily require medical or other professional treatment or
            counseling.

LL.    **Student** means an applicant for admission to the CSU, an admitted CSU Student, an
       enrolled CSU Student, a CSU extended education Student, a CSU Student between
       academic terms, a CSU graduate awaiting a degree, a CSU student currently serving a
       suspension or interim suspension, and a CSU Student who withdraws from the University
       while a disciplinary matter (including investigation) is pending.

MM.    **Third Party** means a person other than an Employee or a Student. Examples include
       employees of auxiliary organizations[28], unpaid interns, volunteers, independent
       contractors, vendors, and their employees, and visitors.

NN.    **Title IX** means Title IX of the Education Amendments of 1972.

OO.    **Title IX Coordinator** means the Campus MPP Employee appointed by the Campus
       president to coordinate compliance with Title IX; VAWA/Campus SaVE Act; and other
       related state and federal laws prohibiting Discrimination, Harassment and Retaliation
       based on Gender or sex, including Sex Discrimination, Sexual Harassment, Sexual
       Misconduct, Dating and Domestic Violence and Stalking. (See Executive Order 1095.)

PP.    **VAWA** means the Violence Against Women Reauthorization Act of 2013 (which
       amends the Jeanne Clery Disclosure of Campus Crimes Statistics Act, commonly known

---

[26] See Cal. Educ. Code § 66262.7.
[27] See Cal. Penal Code § 646.9.
[28] See 5 Cal. Code Regs. § 42406.

as the Clery Act) (20 U.S.C. 1092(f)), under its Campus Sexual Violence Elimination Act provision (Campus SaVE Act).

QQ.   **Veteran or Military Status** means service in the uniformed services.

Veteran or Military Service may be a Protected Status.

RR.   **Working Days** are defined as Monday through Friday, excluding all official holidays or Campus closures at the Campus where the Complaint originated or at the CO where an Appeal is reviewed.

Attachments:   CSU Student Complaint Form
CSU Student Complaint Procedure Timeline

_____
Timothy P. White, Chancellor

Dated:  October 5, 2016

**Revision History:**

As a result of the issuance of this Executive Order, the following documents are superseded as of the effective date of this Executive Order and are no longer applicable:

- Executive Order 1097 (*Systemwide Policy Prohibiting Discrimination, Harassment and Retaliation, Sexual Misconduct, Dating and Domestic Violence, and Stalking Against Students and Systemwide Procedure for Addressing Such Complaints by Students*), dated June 23, 2015

- Executive Order 1097 (*Systemwide Policy Prohibiting Discrimination, Harassment and Retaliation Against Students and Systemwide Procedure for Handling Discrimination, Harassment and Retaliation Complaints by Students*), dated June 3, 2014

- Executive Order 1074 (*Systemwide Policy Prohibiting Discrimination, Harassment and Retaliation Against Students and Systemwide Procedure for Handling Discrimination, Harassment and Retaliation Complaints by Students*), dated April 6, 2012

- Executive Order 1045 (*Systemwide Policy Prohibiting Discrimination, Harassment, and Retaliation Against Students and Applicants for Admission AND Systemwide Procedure for Handling Discrimination, Harassment and Retaliation Complaints by Students and Applicants for Admission Against the CSU and/or CSU Employees*), dated March 1, 2010

**CSU** The California State University

Executive Order 1097
Revised June 23, 2015
Attachment A

### STUDENT COMPLAINT FORM

Executive Order 1097 provides students a systemwide *procedure* to file complaints alleging violations of the California State University (CSU) systemwide *policy* prohibiting Discrimination, Harassment, Retaliation, Sexual Misconduct, Dating or Domestic Violence or Stalking against students by the CSU, Employees, other Students, or Third Parties. **Please fill in all of the information requested below as completely as possible and attach additional pages to this form, if necessary.**

CSU Campus _____

Work Phone _____

Last Name _____ First Name _____ MI ____

Cell Phone _____

Mailing Address _____

Home Phone _____

City _____

Best time to call: ____ AM/PM

State ____ Zip Code _____ E-mail _____

Currently a CSU Student? ☐ Yes ☐ No   Last CSU Registration Date _____

Currently a CSU Applicant? ☐ Yes ☐ No   Last CSU Application Date _____

Was Early Resolution sought? ☐ Yes ☐ No   If yes, with whom: _____ Date _____

Indicate the type(s) of complaint being filed: ☐ Discrimination ☐ Harassment ☐ Retaliation
☐ Sexual Misconduct ☐ Dating Violence ☐ Domestic Violence ☐ Stalking

If you are filing a Discrimination or Harassment complaint, indicate the protected status(es) that was/were the basis(es) of the alleged Discrimination or Harassment. (Please select all that apply):

☐ Race/Color ☐ Religion ☐ Sexual Orientation ☐ Medical Condition
☐ National Origin/Ancestry ☐ Gender/Sex ☐ Disability ☐ Genetic Information
☐ Marital Status ☐ Gender Identity/Expression ☐ Military/Veteran Status ☐ Age

If you are filing a Retaliation complaint, indicate the activity(ies) you engaged in that was/were the basis(es) for the alleged Retaliation.

**STUDENT COMPLAINT FORM**

Executive Order 1097
Revised June 23, 2015
Attachment A

1.  Identify the Respondent(s) against whom your complaint is made.  For each Respondent, provide the identifying information requested below.  Attach additional pages to this form if necessary.

| Respondent(s) name: | Relationship/Association with the campus: | Relationship/Association to you: |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |

2.  Describe the incident(s) or events(s), date(s), time(s), and location(s) giving rise to your complaint.
    Attach additional pages to this form, if necessary.

3.  Describe the specific harm you have suffered resulting from the incident(s).  Attach additional pages to this form, if necessary.

4.  What did you or others do to try to resolve the complaint?  What was the outcome?

**STUDENT COMPLAINT FORM**

Executive Order 1097
Revised June 23, 2015
Attachment A

5. Identify individuals who may have observed or witnessed the incident(s) that you described.

Last Name [                    ] First Name [              ] MI [    ]  Telephone [                    ]

Position/
Job Title [                                        ]  Cell Phone [                    ]

E-mail _____  Telephone [                    ]

Last Name [                    ] First Name [              ] MI [    ]  Cell Phone [                    ]

Position/
Job Title [                                        ]

E-mail _____

6. Do you have any documents or electronic communications (including text messages or email) that support your complaint?

☐ Yes  ☐ No  (Please list and attach a copy.)

7. Do you have any physical evidence (such as photographs, videos, blood tests or rape kits) that support your complaint? (Please describe)

8. Describe the outcome(s) you expect from filing your complaint. Be as specific as possible.

You may elect to have an Advisor present at meeting(s) and/or interview(s) which may be a Sexual Assault Victim's Advocate. If you indicate you will have an Advisor, you are authorizing that individual to accompany you to any meeting(s) and/or interview(s) regarding this complaint. The role of the Advisor is limited to observing and consulting with you.

9. If you will be accompanied by an Advisor, provide the name and telephone number.

Last Name [                    ] First Name [              ] MI [    ]  Telephone [                    ]

Cell Phone [                    ]

**CERTIFICATION**

I certify that the information given in this complaint is true and correct to the best of my knowledge or belief.

Print Name of Student _____

Signature of Student _____  Date [        ]

**For University Use Only:**  Date Complaint Received _____  Signature _____

## CSU Student Complaint Procedure Timeline

Pursuant to Executive Order (EO) 1097, a "Student", defined as an applicant for admission to the CSU, an admitted CSU Student, an enrolled CSU Student, a CSU extended education Student, a CSU Student between academic terms, a CSU graduate awaiting a degree, a CSU Student currently serving a suspension or interim suspension, and a CSU Student who withdraws from the University while a disciplinary matter (including investigation) is pending, may file a Complaint related to Discrimination, Harassment, Retaliation, Sexual Misconduct, Dating or Domestic Violence or Stalking.

- **Immediately following an act/action/incident that falls under Executive Order 1097** or as soon as possible thereafter, Students who believe they are or may have been victims of Discrimination, Harassment, Retaliation, Sexual Misconduct, Dating or Domestic Violence or Stalking, may initiate the **Article III. Campus Procedure for Responding to Complaints** to receive information about the procedures that exist for resolving such matters. All incidents should be reported even if a significant amount of time has passed. However, delaying a report or Complaint may impede the ability to conduct an investigation or take appropriate remedial actions.

**For the purpose of this Executive Order, Working Days** are defined as Monday through Friday, excluding all official holidays or Campus closures at the Campus where the Complaint originated or at the Chancellor's Office (CO) where the Complaint Appeal is reviewed.

- **Within ten (10) Working Days after receipt of a Complaint,** an intake interview shall be conducted with the Complainant.

- **Within ten (10) Working Days** after reviewing all written Complaints and the information received during the intake interview, the Discrimination/Harassment/Retaliation (DHR) Administrator or Title IX Coordinator will notify the Complainant that the Complaint has been accepted for investigation and the timeline for completion of the investigation. If the DHR Administrator or Title IX Coordinator determines the Complainant has failed to state a Complaint within the scope of this Executive Order, s/he will provide the Complainant with written notice of this determination within **ten (10) Working Days**. The DHR Administrator or Title IX Coordinator will also inform the Complainant that if additional information is provided, the Complaint will be reviewed again.

- **Within sixty (60) Working Days after the intake interview,** the Investigator shall complete the investigation, write and submit an investigation report to the campus designated DHR Administrator or Title IX Coordinator. If this timeline is extended pursuant to Article V. E, it shall not be extended for a period longer than an additional **thirty (30)** Working Days from the original due date.

- **Within ten (10) Working Days of receiving the investigation report**, the DHR Administrator or Title IX Coordinator shall review the investigation report and notify the Parties in writing of the investigation outcome. If the DHR Administrator or Title IX Coordinator performed the investigation, s/he shall notify the Parties in writing of the investigation outcome within **ten (10) Working Days** of completing the investigation report. The Notice shall indicate whether or not this Executive Order was violated and the Complainant's and Respondent's right to file an Appeal under this policy.

**CSU** The California State University
OFFICE OF THE CHANCELLOR

## CSU Student Complaint Procedure Timeline

- **Within ten (10) Working Days after the date of the Notice of Investigation Outcome,** the Student may file a written Appeal with the CO.

- **Within thirty (30) Working Days after receipt of the written Appeal,** the CO designee shall respond to the appealing party, unless the timeline has been extended pursuant to Article IV. G. or Article V. E.  A separate notification shall be provided to the non-appealing party, indicating whether or not the allegations were substantiated on Appeal by a Preponderance of the Evidence.

- **Closure.**  The CO Appeal Response is final and concludes the Complaint and Appeal process under this Executive Order.

**Pursuant to EO 1097 Article V. E, the timelines noted above may be extended as follows:**

The timeline for the procedures contained within this Executive Order may be extended for any reason deemed to be legitimate by the Campus investigator/CO Appeal reviewer or by mutual agreement of the Parties. The timelines stated within this Executive Order will be automatically adjusted for a reasonable time period that should not exceed an additional **thirty (30) Working Days** for a Campus investigation or an additional **thirty (30) Working Days** for a reopened Campus investigation under Article IV. The Complainant and Respondent shall receive written notification of any period of extension.