UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JANE DOE,

        Plaintiff,

    v.

TIMOTHY WHITE, *et al.*,

        Defendants.

Case No.  19-cv-04923-SI

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS WITHOUT LEAVE TO AMEND**

Re: Dkt. No. 24

On January 29, 2020, the Court held a hearing on defendants' motion to dismiss.  For the reasons set forth below, the Court GRANTS the motion without leave to amend the complaint.

## BACKGROUND

This lawsuit arises out of a Title IX investigation into alleged sexual harassment/misconduct by plaintiff Jane Doe while she was a graduate student at Sonoma State University.  Plaintiff was enrolled in Sonoma State University's two-year master's program in Depth Psychology beginning September 2016.  Compl. ¶ 26 (Dkt. No. 1).[1]  Plaintiff alleges that defendants denied her procedural due process by effectively suspending her for an academic school year while the investigation took place.

Defendant Timothy White is Chancellor of the California State University system, and responsible for issuing its Title IX Policy, Executive Order (EO) 1097.  *Id.* at ¶ 9 ("Parties").[2]

---

[1] The Complaint has several sequences of consecutively numbered paragraphs.  Unless otherwise noted, the citations refer to the paragraphs in the "Facts" section of the complaint.

[2] EO 1097 implements Title IX throughout the California State University system by laying out investigation and disciplinary procedures.  Title IX is a federal civil rights law protecting against sex discrimination in education, and includes protections against sexual harassment.  20 U.S.C. §§ 1681–1688.

Defendants Sarah Clegg, Joyce Suzuki, William Kidder, and Jesse Andrews are or were responsible for administering and operating EO 1097 at Sonoma State University as Director, Coordinator, Acting Coordinator, and Deputy Coordinator of Title IX, respectively; defendant Clegg is also "Director of HR Compliance Services," and defendant Andrews is also a Title IX Senior Investigator and Trainer. *Id*. at ¶¶ 10-13 ("Parties").  At different times, defendants Suzuki, Kidder, and Andrews handled the Title IX investigation into plaintiff's alleged misconduct.  Defendants are sued in their individual capacities.  The Title IX investigation began on May 18, 2017, plaintiff was found innocent of the charges of misconduct on August 22, 2018, and the complainants' appeal was denied on October 10, 2018. *Id*. at ¶¶ 59, 77, 81, 90, 94, 96.

## I.      The Incident Under Investigation

The Title IX investigation arose out of a complaint filed by fellow students accusing plaintiff of engaging in "a display of a sexual activity, masturbation" during a Methods of Depth Psychology class held on April 27, 2017. *Id*. at ¶¶ 33, 64.  The eleven students in plaintiff's master's program cohort "took all of their classes together," and thus this class included plaintiff and complainants DB, VH, and NH.[3] *Id*. at ¶¶ 29-30.  The class curriculum included an "Authentic Movement" exercise. *Id*. at ¶ 33.  The principles of the Authentic Movement exercise were discussed in class on April 20 and before the exercise began on April 27. *Id at* ¶ 33.  The instructor began the class on April 27 "by directing the students to gyrate their hips in 'hip circles' and inviting the students to 'move like snakes.'" *Id*. at ¶ 34.  Students were then paired to form two concentric circles with "movers" on the inside and "witnesses" on the outside. *Id*. at ¶¶ 35, 37.  Guidelines for movers included to "[c]hallenge yourself to move in ways that might be taboo or that you might not normally move." *Id*. at ¶ 41.  Guidelines for witnesses included to "stick with it, try to contain it" if they began to feel uncomfortable; "[i]f you feel overwhelmed at any point, you can step back or step out of the circle." *Id*. at ¶ 40.  Plaintiff was paired with NH. *Id*. at ¶ 36.  The movers were instructed "to get into their starting dream image, and then to begin to physically move the dream forward

_____

[3] NH is later designated as MH, from paragraph 57 of the complaint onward.  For the sake of consistency, this order refers to "NH."

United States District Court
Northern District of California

from there . . . the goal was to allow the dream to unfold spontaneously, guided by the body." *Id*. at ¶ 42.  Witnesses were instructed to "re-enact three images from the movement that they had witnessed," and subsequently to switch roles.  *Id*. at ¶¶ 45-46.  At the end of the exercise, the class engaged in a discussion and debrief with the instructor, during which "[n]o one mentioned anything unusual or upsetting."  *Id*. at ¶ 49.

After the class, DB wrote to the instructor that she was uncertain if plaintiff's movements during the exercise "crossed a line or [were] just authentically expressing what's going on for her," and that she was concerned about NH processing those movements as plaintiff's witness.  *Id*. at ¶ 50.  On April 30, NH wrote to the instructor "to complain about Doe's dance."  *Id*. at ¶ 52.  The instructor replied that she did not see plaintiff's movements but, based on DB's description, "I want you to know that [Jane Doe]'s behavior was not appropriate for the classroom."  *Id*.  On May 6, VH emailed the Program Coordinator "threatening to withdraw from the program," and explained, "After last week's actions by [Jane Doe,] I know that I cannot complete my program with her as part of my cohort."  *Id*. at ¶ 54.  VH admitted to not witnessing any of plaintiff's movements herself, but that "hearing about her actions alone was triggering and anxiety producing."  *Id*.  On May 10, student MR emailed the Student Conduct Coordinator, "writing that Doe's dance was not sexual." *Id*. at ¶ 56.  On May 11, DB filed a written report "alleging that Jane Doe had sexually harassed NH during the movement exercise," and stating, "I am not sure how I am going to finish out the last two weeks let alone be in the cohort for another year with [Doe]."  *Id*. at ¶ 57.  VH also filed a complaint on the same day.  *Id*. at ¶ 58.  On May 19, NH submitted a written complaint, "which contained certain passages identical to the complaint DB had submitted eight days earlier."  *Id*. at ¶ 62.  NH wrote, "I never want to work with [Jane Doe] again, or have a conversation with her, and I do not wish to ever have to endure her facilitating a classroom experiential activity ever again."  *Id*.  The instructor wrote to plaintiff on May 27, "[r]est assured that I hold the perspective that … your movement … was not egregious nor directed at anyone in a harassing manner. You were simply doing the exercise and your interpretation of it."  *Id*. at ¶ 66.

///

## II.     The Investigation Under Defendant Suzuki

Defendant Suzuki initiated a Title IX investigation on May 18, 2017, and interviewed DB, NH and VH the same day.  *Id*. at ¶ 59.  On May 19, Suzuki sent plaintiff a letter stating: "[NH] and [DB] have alleged that on April 27, 2017, during an experiential exercise called Authentic Movement, you engaged in a display of a sexual activity, masturbation, instead of the assigned activity.  You did so without getting consent from [NH], the person assigned as the 'witness,' for the activity, or your other classmates who were exposed to your display."  *Id*. at ¶ 64.  Suzuki offered an informal resolution to plaintiff on June 12, "represent[ing] . . . that Sonoma State would drop the investigation if Doe left Sonoma State and agreed to forego the credits she earned in her first year . . . and informed her that Sonoma State would forgive her student loans if she did so."  *Id*. at ¶ 67.  Plaintiff declined the offer on July 10.  *Id*. at ¶ 68.

Suzuki interviewed plaintiff for three hours on July 18, during which she informed plaintiff "that she could return to class when school resumed in late August."  *Id*. at ¶ 69.  "According to the Complainants [DB, VH, and NH], during a meeting on July 27, 2017, Defendant Joyce Suzuki 'stated unequivocally that [Jane Doe] would, in fact, be in class during the investigation.'"  *Id*. at ¶ 70.  Suzuki interviewed the Methods of Depth Psychology instructor on August 4.  *Id*. at ¶ 72.

Plaintiff alleges that EO 1097 required that the investigation be completed within "60 working days absent an official extension of time," or "no later than August 15, 2017."  *Id*. at ¶ 60.  On August 19, 2017,  Suzuki informed plaintiff that she "will not be allowed to attend classes while the investigation is on-going."  *Id*. at ¶ 74.  Suzuki described this as an "interim remedy."  *Id*.

## III.    The Investigation After Defendant Suzuki's Departure

Suzuki separated from Sonoma State University in September 2017, and the investigation was transferred several times, first to defendant Andrews.  *Id*. at ¶¶ 76-77.  On October 30, Andrews went on parental leave and the case was transferred to defendant Kidder.  *Id*. at ¶ 81.  On May 15, 2018, Kidder took a personal leave and transferred the case back to Andrews.  *Id*. at ¶ 90.

Plaintiff was informed by either Andrews or Kidder that "she should expect a result in the case by mid-October, 2017."  *Id*. at ¶ 77.  Depth Psychology student GD sent an email to defendant

United States District Court
Northern District of California

Andrews on September 25, in which she "expressed her opinion that Doe was being scapegoated in a manner that 'is inappropriately discrediting her career and her work.'"  *Id*. at ¶ 79.  Plaintiff requested to withdraw from the university on October 27, 2017.  *Id*. at ¶ 80.[4]  Plaintiff learned of Andrews's parental leave when she requested an update on the case, and received an out-of-office message in response.  *Id*. at ¶ 81.  On November 21, Kidder interviewed the complainants.  *Id*. at ¶ 82.  On November 29, Kidder received a letter from the attorney representing MH, DB, and VH; the letter averred that Kidder represented in the meeting on the 21st that "'the evidence review would be produced approximately the first week of December' and 'the report should be issued by December 15.'"  *Id*. at ¶ 83.  On December 19, plaintiff emailed Kidder "saying she was 'awaiting the result of the Title IX investigation,' and noting that she had been informed that she 'could expect to hear something by mid-October.'"  *Id*. at ¶ 85.  Kidder responded later that day that "[t]he report should be issued in a few days."  *Id*. at ¶ 86.  On January 13, 2018, plaintiff emailed Kidder again about the investigation's status, and received no reply.  *Id*. at ¶¶ 87-88.

On June 2, 2018, Andrews sent a notice to plaintiff and the complainants that the evidence could be reviewed, with responses due by July 8.  *Id*. at ¶ 91.  Plaintiff obtained additional time to review and respond to the evidence, which she did on July 30.  *Id*. at ¶¶ 92-93.

On August 22, 2018, Andrews informed the parties that plaintiff "was not responsible for sexually harassing anyone."  *Id*. at ¶ 94.  The complainants submitted an appeal that day.  *Id*. at ¶ 95.  On October 10, 2018, the Chancellor's Office denied the appeal and concluded that "Complainants do not present evidence that … Respondent's behavior, especially within the constructs of a graduate level degree, would be considered by a reasonable person, in the shoes of Complainants, as sufficiently severe to limit the ability to participate in university programming."  *Id*. at ¶ 96.  The complaint does not state whether plaintiff returned to Sonoma State to complete the master's Program.

In this lawsuit, plaintiff brings one cause of action pursuant to 42 U.S.C. § 1983, alleging that defendants violated her Fifth and Fourteenth Amendment rights to Due Process.  *Id*. at ¶¶ 102-

---

[4]  The complaint does not state what happened in response to plaintiff's request to withdraw.

104.  Plaintiff alleges that she has a contract-created property interest in continued enrollment at Sonoma State University because she paid tuition and fees, and that this interest implicates the Due Process Clause in higher education disciplinary actions.  *Id.* at ¶¶ 105-107.  Plaintiff also alleges a liberty interest in her academic reputation and the freedom to pursue her chosen career.  *Id.* at ¶ 108. Plaintiff alleges that her "circumstances entitled her to a hearing prior to an effective 14 month suspension," and that Sonoma State University had a Constitutional obligation to provide her with "an explanation of the evidence in their possession and an opportunity to present her side of the story."  *Id.* at ¶ 110.  The complaint seeks damages, costs and attorney's fees.

## LEGAL STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. Pro. 8(a)(2), and a complaint that fails to do so is subject to dismissal pursuant to Rule 12(b)(6).  To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a Defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 544, 555.  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  *Iqbal,* 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Id.* (quoting *Twombly*, 550 U.S. at 557).  "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.*

In reviewing a Rule 12(b)(6) motion, a district court must accept as true all facts alleged in the complaint and draw all reasonable inferences in favor of the plaintiff.  *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).  However, a district court is not required to accept as

true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

If the Court dismisses the complaint, it must then decide whether to grant leave to amend. The Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (citations and internal quotation marks omitted).

## DISCUSSION

Defendants move to dismiss the complaint on numerous grounds. Defendants contend that plaintiff's procedural due process claim fails because she did not exhaust her state judicial remedies prior to filing this lawsuit. Defendants also contend that because plaintiff is seeking monetary damages from defendants in their individual capacities, defendants are entitled to qualified immunity from suit because the law surrounding due process rights in post-secondary education is not clearly established. Defendants further contend that plaintiff has failed to state a claim because she has not alleged a constitutionally protected property or liberty interest, and that even if she has, the due process afforded her was adequate. Finally, defendants assert plaintiff should not be permitted to proceed anonymously as Jane Doe, and they move to dismiss defendant Timothy White from the suit in the absence of allegations that he was involved in the investigation.

## I.     State Judicial Exhaustion

Defendants contend that plaintiff was required to exhaust state judicial remedies by filing state writs of mandate under Cal. Code Civ. Proc. § 1094.5 or § 1085 before pursuing a 42 U.S.C. § 1983 claim. Defendants argue that "[i]t is unclear whether Plaintiff is challenging (1) the decision to remove her from classes pending investigation, or (2) the delay in receiving the final adjudication of the complaint against her (which was an innocence finding). Regardless of which aspect Plaintiff challenges, Plaintiff had recourse to writ proceedings in state court under Section 1094.5 (which applies to final decisions), or Section 1085 (which applies to allegations of delay)." Mot. at 11 (Dkt.

United States District Court
Northern District of California

No. 25).[5]

Plaintiff contends that there is no requirement to exhaust her state judicial remedies prior to filing suit under 42 U.S.C. § 1983.  Plaintiff also argues that section 1094.5 is inapplicable because that provision governs challenges to final decisions of administrative bodies, while here plaintiff is not challenging the final decision finding her innocent.  Plaintiff does not specifically address defendant's argument about the availability of section 1085 relief to challenge the delay, but she does challenge defendants' factual description and asserts that throughout the Title IX investigation, defendants repeatedly told her that the disciplinary process would end soon.

The Court agrees with plaintiff and finds that based upon the nature of plaintiff's claim – which does not challenge the validity of a final administrative order – plaintiff was not required to seek a writ in state court prior to filing this lawsuit.  The Supreme Court held in *Patsy v. Board of Regents of the State of Florida* that "exhaustion of state administrative remedies should not be required as a prerequisite to bringing an action pursuant to § 1983." *Patsy v. Bd. of Regents of State of Fla.*, 457 U.S. 496, 516 (1982).  Moreover, the availability of federal relief under § 1983 is notwithstanding additional relief available under state law: "It is no answer that the State has a law which if enforced would give relief.  The federal remedy is supplementary to the state remedy, and the latter need not be first sought and refused before the federal one is invoked." *Monroe v. Pape*, 365 U.S. 167, 183 (1961).

The Court finds *Doe v. Regents of the Univ. of Cal.*, 891 F.3d 1147 (9th Cir. 2018), upon which defendants rely heavily, distinguishable.  In *Doe*, after an investigation and two hearings, the

---

[5]   California Code of Civil Procedure section 1094.5 provides a mechanism to seek judicial review of a "final administrative order or decision," Cal. Code Civ. Proc. § 1094.5(a),  and section 1085 provides that "A writ of mandate may be issued by any court to any inferior tribunal, corporation, board, or person, to compel the performance of an act which the law specially enjoins, as a duty resulting from an office, trust, or station, or to compel the admission of a party to the use and enjoyment of a right or office to which the party is entitled, and from which the party is unlawfully precluded by that inferior tribunal, corporation, board, or person." Cal. Code Civ. Proc. § 1085(a).  "It is generally recognized that traditional mandamus under section 1085 applies to 'quasi-legislative' decisions, defined as those involving 'the formulation of a rule to be applied to all future cases,' while administrative mandamus under section 1094.5 applies to 'quasi-judicial' decisions, which involve 'the actual application of such a rule to a specific set of existing facts.'" *S. California Cement Masons Joint Apprenticeship Comm. v. California Apprenticeship Council*, 213 Cal. App. 4th 1531, 1541 (2013) (internal quotation marks and citation omitted).

university suspended John Doe after finding that he was responsible for the sexual assault of a fellow student. The *Doe* plaintiff filed a federal lawsuit alleging federal and state law claims, including a claim under 42 U.S.C. § 1983 for a violation of his procedural due process rights, and alleging that he had not sexually assaulted the student and that the sexual encounter was consensual. The Ninth Circuit held that the plaintiff's section 1983 and Title IX causes of action were precluded because he had failed to file a section 1094.5 writ in state court challenging the validity of the final administrative decision. The Ninth Circuit noted that "[u]nder federal common law, federal courts accord preclusive effect to state administrative proceedings that meet the fairness requirements of *United States v. Utah Construction & Mining Co.*, 384 U.S. 394 (1966), . . . [and] [w]e evaluate the fairness of a state administrative proceeding by resort to both the underlying administrative proceeding and the available judicial review procedure." *Id.* at 1154 (internal citations modified and omitted). The Ninth Circuit found that a section 1094.5 petition "provides 'an adequate opportunity for de novo judicial review.'" *Id.* (internal citation omitted). The court concluded that because "California has adopted the *Utah Construction* standard, [a federal court in California] give[s] preclusive effect to a state administrative decision if the California courts would do so," and that the university's suspension of Doe after an investigation and two hearings was "the sort of 'adjudicatory, quasi-judicial decision' that is subject to the judicial exhaustion requirement." *Id.* (citation omitted). Here, however, plaintiff does not seek to challenge Sonoma State University's final determination that she was innocent of misconduct, and thus the *Doe* requirement to file a § 1094.5 writ of administrative mandate to review an agency decision is inapplicable.

The Court is also not persuaded by defendants' contention that because plaintiff could have filed a traditional writ of mandate under § 1085, she was therefore required to exhaust this remedy prior to filing suit. Defendants do not cite any authority holding that a section 1983 plaintiff is required to file such a writ prior to seeking relief under section 1983. Instead, the cases cited by defendants involve factually distinguishable circumstances, *see DeCuir v. Cnty. of Los Angeles*, 64 Cal. App. 4th 75, 82 (1998) (holding unsuccessful applicant for civil service job was required to exhaust internal procedure for review of administrative decisions by seeking mandamus rather than bypassing such review by filing civil suit for damages), or simply hold that a section 1085 writ is

an available remedy to challenge the deprivation of a property interest.  *See Bostean v. Los Angeles Unified Sch. Dist.*, 63 Cal. App. 4th 95, 105, 112, 117 (1998) (in lawsuit alleging claims under 42 U.S.C. § 1983 and Cal. Code Civ. Proc. § 1085, holding school district employee placed on involuntary leave had a federally protected property interest in his continued employment was thus entitled to a hearing before his deprivation).

Accordingly, the Court DENIES defendants' motion to dismiss for failure to exhaust state remedies.

## II.      Procedural Due Process and Qualified Immunity

Plaintiff claims that her right to procedural due process was violated when defendants did not provide her with a hearing prior to an effective 14 month suspension and by not providing her with an explanation of the evidence in their possession and an opportunity to present her side of the story.  Compl. ¶ 110.

Defendants contend that they are entitled to qualified immunity because during the time period at issue, it was not clearly established that plaintiff had a protected property or liberty interest in continued class attendance while under investigation for sexual misconduct in the context of post-secondary education in California.  Defendants also argue that the qualified immunity analysis must be particularized to the facts of the case, and they cite authority for the proposition that "the law regarding procedural due process claims can rarely be considered clearly established at least in the absence of closely corresponding legal and factual precedent." *Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 983 (9th Cir. 1998).  Defendants also argue that they did not violate plaintiff's due process rights.

"A procedural due process claim has two distinct elements: (1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections." *Id.* at 982.  "In seeking to defeat a claim of qualified immunity, the plaintiff bears the burden of proving not only that both elements of his claim are resolved in his favor, but also that both elements are 'clearly established' in his favor." *Id.*; *see also Davis v. Scherer*, 468 U.S. 183, 197 (1984) ("A plaintiff who seeks damages for violation of constitutional or statutory rights may

overcome the defendant official's qualified immunity only by showing that those rights were clearly established at the time of the conduct at issue.").

### A.    Qualified Immunity

"Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (citation and quotation marks omitted).  Courts have discretion to decide which of the two prongs of qualified-immunity analysis to address first.  *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

"A Government official's conduct violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would [have understood] that what he is doing violates that right.'"  *al-Kidd*, 563 U.S. at 741 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).  "In assessing claims of qualified immunity, reviewing courts must not view constitutional rights in the abstract but rather 'in a more particularized, and hence more relevant, sense.'"  *Brewster*, 149 F.3d at 977 (quoting *Anderson*, 483 at 640).  "Thus, in order to ensure that government officials receive necessary guidance, courts should focus the qualified immunity inquiry at the level of implementation."  *Id.*

To be clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate."  *White v. Pauly*, 137 S. Ct. 548, 551 (2017).  "The right must be settled law, meaning that it must be clearly established by controlling authority or a robust consensus of cases of persuasive authority."  *Tuuamalemalo v. Greene*, 946 F.3d 471, 477 (9th Cir. 2019) (citing *District of Columbia v. Wesby*, 138 S. Ct. 577, 590-91 (2018)).  "A right can be clearly established even though there was no binding precedent in this circuit."  *Lum v. Jensen*, 876 F.2d 1385, 1387 (9th Cir. 1989) (citation omitted).  In such a case, the court "evaluate[s] the likelihood that this circuit or the Supreme Court would have reached the same result as courts that had already considered the issue."  *Id.*  In the absence of binding precedent, the court may look to all available decisional law, including the law of other circuits and district courts.  *See Tuuamalemalo*, 946 F.3d

at 477; *Carrillo v. Cnty. of Los Angeles*, 798 F.3d 1210, 1223 (9th Cir. 2015).  Unpublished district court decisions may also "inform" the court's analysis.  *Bahrampour v. Lampert*, 356 F.3d 969, 977 (9th Cir. 2004).

In *Lum*, where no binding precedent addressed the issue in question and other circuits' decisions were in conflict, the Ninth Circuit found that qualified immunity was appropriate because the law was not "clearly established."  *Id*. at 1389.  At issue was whether there was a clearly established substantive due process right to continued public employment that would preclude an arbitrary, capricious and pretextual termination.  *Id*. at 1387.  The Ninth Circuit had not yet addressed the issue; four other circuits had affirmatively established substantive due process protections; five other circuits had left the issue open or summarily addressed the issue without finding a violation; and one circuit had held there was no substantive due process right.  *Id*. at 1387-88.  The Ninth Circuit held that the "absence of binding precedent in this circuit plus the conflict between the circuits is sufficient, under the circumstances of this case, to undermine the clearly established nature of a right."  *Id*. at 1389.

### B.  Deprivation of Constitutionally Protected Property or Liberty Interest

Plaintiff alleges that she has a contract-created property interest in continued enrollment at Sonoma State University because she paid tuition and fees.  Compl. ¶ 107.[6]  Plaintiff alleges that the her property interest is clearly established because "the majority of federal courts that have decided the issue have held that students at public institutions of higher education have a property right to continued enrollment" and "[t]he Ninth Circuit has several times ruled on procedural due process claims involving public institutions of higher education; suggesting that the court assumed that a student has a protected liberty or property interest."  *Id*. ¶ 109.  Plaintiff argues that "[a]ny

---

[6]  Plaintiff's opposition largely focuses on her alleged property interest in continued enrollment, and the complaint clearly alleges a contract-based property interest as the basis for the procedural due process claim.  Plaintiff also alleges harm to her reputation, *see* Compl. ¶ 108, although it is not clear from the complaint or plaintiff's opposition if plaintiff contends that her liberty interest provides a separate and independent basis for her procedural due process claim.  In any event, as discussed *infra*, the Court finds that there is no clearly established liberty or property right in the context of higher education, and thus that defendants are entitled to qualified immunity.

United States District Court
Northern District of California

reasonable official in Defendants' shoes would have understood that suspending Jane Doe for a year without notice and an opportunity to be heard violated her constitutional rights to liberty and property." Opp'n at 15 (Dkt. No. 28).

Defendants counter that neither the Supreme Court nor the Ninth Circuit have held that a student has a property or liberty interest in continued enrollment in a public higher education program, and that there is no controlling precedent or robust consensus of cases that has "placed the statutory or constitutional question beyond debate." Defendants assert that "[p]laintiff fails to identify even a single case – not in the U.S. Supreme Court , not in any circuit court, and not even in any district court – involving facts similar to those alleged here, whereby a higher education student was temporarily barred from attending classes while under investigation for alleged sexual harassment ('interim remedy'), but was later subsequently found not to have violated university policy." Reply at 1 (Dkt. No. 29).

In *Goss v. Lopez*, 419 U.S. 565 (1975), the Supreme Court held that public high school students who had been suspended for misconduct for up to 10 days without a hearing had property and liberty interests protected by the Due Process Clause. The Court held that where state law has created a student's entitlement to a public education, that entitlement constitutes a property interest that is constitutionally protected. *Id.* at 573-74 (analyzing Ohio law that directed local authorities to provide a free education to all residents between five and 21 years of age and a compulsory-attendance law). The Court noted that such property interests "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Id.* at 586 (citing *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972)). The *Goss* court also held that "[w]hen discipline like lengthy suspension or expulsion from a public elementary or secondary school is at issue, this state law property right also gives rise to a constitutionally protected liberty interest in reputation." *Id.* at 576.

In cases of higher education, however, the Supreme Court has never decided whether students have a protected property or liberty interest in continued enrollment. Instead, the Court has assumed that students have such an interest and held that the procedures provided satisfied due process. *See Bd. of Curators of Univ. of Mo. v. Horowitz*, 435 U.S. 78, 84-85 (1978) (medical

13

student who was dismissed during final year of study due to failure to meet academic standards alleged liberty interest to "continue her medical education or to return to employment in a medically related field"; the Supreme Court "[a]ssum[ed] the existence of a liberty or property interest" and held process provided was sufficient); *Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214, 222-23 (1985) ("remembering Justice Brandeis' admonition not to 'formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied' . . . [we] accept the University's invitation to 'assume the existence of a constitutionally protectible property right in [Ewing's] continued enrollment,' and hold that even if Ewing's assumed property interest gave rise to a substantive right under the Due Process Clause to continued enrollment free from arbitrary state action, the facts of record disclose no such action.") (citations and internal quotation marks omitted).

As plaintiff acknowledges, the Ninth Circuit has not squarely addressed whether there is a property or liberty interest in continued attendance in higher education, under California law or the law of any other state.[7] Plaintiff cites *Lucey v. Nevada ex rel. Bd. of Regents of Nevada Sys. of Higher Educ.*, 380 Fed. App'x 608 (9th Cir. May 21, 2010), in which the Ninth Circuit affirmed in an unpublished memorandum disposition a district court's grant of summary judgment. The district court had granted summary judgment in favor of university officials, holding that the officials did not violate the plaintiff student's procedural due process rights when they placed a hold on his transcript and notated his records with allegations of wrongdoing because he was provided with sufficient notice and an opportunity to be heard. *See Lucey v. Nevada ex rel. Bd. of Regents of Nevada Sys. of Higher Educ.*, No. 2:07-cv-00658-RLH-RJJ, 2009 WL 971667, at *4 (D. Nev. Apr. 9, 2009). The district court also held that the defendants were entitled to qualified immunity because

---

[7] The Ninth Circuit has held that a physician who was employed as a medical resident had a property interest in his residency, and thus that he was entitled to due process in connection with the termination of the residency prior to the end of the training program. *Stretten v. Wadsworth Veterans Hosp.*, 537 F.2d 361, 367 (9th Cir. 1976) ("Dr. Stretten, at the time of his appointment, was advised that he would be employed for the 'duration of this training unless sooner terminated, and subject to periodic review by resident review board' and, as found by the district court, the duration of the training was four years. We rely primarily on these facts in finding no error in the district court's conclusion that Dr. Stretten's claim to his residency is a property interest deserving of appropriate due process before it is removed."). The Ninth Circuit reversed the district court's finding of a due process violation, however, holding that the physician had been provided with adequate process. *Stretten* is inapposite because the due process right arose in the context of employment.

14

United States District Court
Northern District of California

1   there was no constitutional violation and did not reach the question of whether the right was clearly

2   established.  *Id*. at *5.

3        The Ninth Circuit affirmed, holding that "Lucey's right to procedural due process at the

4   December 4 hearing was satisfied because Lucey was subject to sanctions less than suspension or

5   expulsion and received 'some kind of notice and [was] afforded some kind of hearing.'"  *Lucey*, 380

6   Fed. App'x at 610 (quoting *Goss*, 419 U.S. at 579).  However, neither the district court nor the Ninth

7   Circuit addressed the nature of the plaintiff's protected interest.  *See also Gamage v. Nev. ex rel. Bd.*

8   *of Regents of Higher Educ.*, 647 Fed. App'x 787, 788 (9th Cir. Apr. 7, 2016) (affirming in

9   unpublished opinion a district court's summary judgment in favor of defendants in case brought by

10  student who was removed from doctoral program due to plagiarism, holding student "received more

11  process than was due").[8]

12       More recently, the Ninth Circuit affirmed in a published decision a district court's dismissal

13  of a complaint brought by student athletes against the University of Oregon challenging their

14  suspensions after a finding of sexual misconduct in violation of the Student Conduct Code.  *Austin*

15  *v. Univ. of Oregon*, 925 F.3d 1133, 1139 (9th Cir. 2019).  In the district court, the students asserted

16  property and liberty interests in their education, scholarships, reputation, and future potential NBA

17  careers, and they alleged that the university defendants had denied them procedural due process in

18  connection with the suspensions.  *See Austin v. Univ. of Or.*, 205 F. Supp. 3d 1214, 1221 (D. Or.

19  2016).  The district court held that the individual defendants were entitled to qualified immunity

20  because there was no clearly established property or liberty interest.  *Id.* at 1221-22.

21       The Ninth Circuit affirmed.  The court "assume[d], without deciding, that the student athletes

22  have property and liberty interests in their education, scholarships, and reputation as alleged in the

23  complaint," and held that the students received sufficient due process by receiving notice and a

24

25

_____

26      [8] In *Gamage*, the district court held that the student plaintiff had a protected property interest
in continued enrollment at a public institution of higher learning.  *See Gamage v. Nevada ex rel. Bd.*
27  *of Regents of Nevada Sys. of Higher Educ.*, No. 2:12-CV-00290-GMN, 2014 WL 250245, at *8 (D.
Nev. Jan. 21, 2014) (citing *Horowitz*, 435 U.S. at 84-85).  The Ninth Circuit did not specifically
28  address this holding in its unpublished opinion.

meaningful opportunity to be heard.  *Austin*, 925 F.3d at 1139.[9]  Because the court found that there were no due process violations, the court did not reach the district court's qualified immunity finding.  *See id.* at 1139 n.1.

District courts within the Ninth Circuit have recognized that "[t]here 'is a dearth of binding case law addressing the issue of whether there is a constitutionally protected right to continued enrollment in a state college or university.'"  *Edwards v. MiraCosta College*, Case No. 3:16-cv-01024-BEN-JMA, 2017 WL 2670845, at *5 (S.D. Cal. June 20, 2017) (quoting *Hunger v. Lassner*, No. 12-00549, 2014 WL 12599630, at *9 (D. Haw. Apr. 30, 2014)); *see also Lachtman v. Regents of Univ. of Cal.*, 158 Cal. App. 4th 187, 199 (2007) ("No United States or California Supreme Court opinion holds a student has a property or liberty interest in continued enrollment in good standing in an academic program.").  These courts have noted that "[c]ourts have often assumed, without deciding, that students pursuing post-secondary education have a constitutionally protected liberty or property interest in continued enrollment," generally in the context of dismissing due process claims on the ground that the process provided was adequate.  *Edwards*, 2017 WL 2670845, at *5 (citing cases).  In *Edwards*, the district court held that a community college student who had been suspended had "plausibly alleged a constitutionally protected liberty interest sufficient to survive a motion to dismiss" based on allegations that "the suspension has negatively affected his grade point average, resulted in him being placed on academic probation, and caused him to be ineligible for academic scholarships."  *Id.*

Some district courts within the Ninth Circuit have held that there is a property interest in continued enrollment, *see Hunger*, 2014 WL 12599630, at *13, and *Gamage*, 2014 WL 250245, at *8, and other courts have held that there is no such property interest.  *See, e.g.*, *Harrell v. Southern Oreg. Univ.*, No. CV 08-3037 CL, 2010 WL 2326576, at *8-9 (D. Or. Mar. 24, 2010) (holding plaintiff student had no property interest because, *inter alia*, there is no entitlement to post-secondary education); *see also Ryan v. Harlan*, No. CV-10-626-ST, 2011 WL 711110, at *7 (D. Or.

---

[9]  *See also Oyama v. Univ. of Hawaii*, 813 F.3d 850, 874 (9th Cir. 2015) ("But even if we accept Oyama's argument that the University's decision deprived him of a constitutionally protected interest, the University provided him with adequate process.").

United States District Court
Northern District of California

Feb. 22, 2011) ("Even if he was denied due process, Ryan has no recognized due process interest in graduate level education.").

The Court is aware of only one case within the Ninth Circuit holding that the property right was clearly established, *see Hunger*, 2014 WL 12599630, at *13,[10] and several cases granting qualified immunity on the ground that the right was not clearly established. *See Doe v. Univ. of Oregon*, No. 6:17-CV-01103-AA, 2018 WL 1474531, at *11-14 (D. Or. Mar. 26, 2018) (holding Oregon law provided the plaintiff with underlying substantive interest in continued enrollment in higher education based on payment of tuition and fees, but granting qualified immunity to defendants because "[t]he circuits are split on whether there education at a public university implicates the Due Process Clause, and there is no Supreme Court or Ninth Circuit authority on resolving the question"); *Brady v. Portland State Univ.*, No. 3:18-CV-01251-HZ, 2019 WL 4045652, at *4 (D. Or. Aug. 23, 2019) (Oregon law may create property interest but the right was not clearly established).

Plaintiff relies on cases from other circuits to argue that it is clearly established that students at public institutions of higher education have a protected property right to continued enrollment. However, although a number of courts have held that there is a protected interest, the source of that interest varies or is not clearly identified  The First and Sixth Circuits have cited *Goss* and held that the Due Process Clause is implicated by higher education disciplinary decisions.  *See Gorman v. Univ. of Rhode Island*, 837 F.2d 7, 12 (1st Cir. 1988); *Flaim v. Med. Coll. of Ohio*, 418 F.3d 629, 633 (6th Cir. 2005).  However, the *Gorman* and *Flaim* decisions do not specify whether the protected

---

[10]  The *Hunger* court reached that conclusion based on what it viewed as "the Ninth Circuit's broad interpretation of what constitutes 'clearly established' law in the absence of binding precedent" and based upon *Goss*, the Ninth Circuit's unpublished decision in *Lucey*, the district court's decision in *Gamage*, and the Eleventh Circuit's decision in *Barnes v. Zaccari*, 669 F.3d 1295, 1303 (11th Cir. 2012).  *See Hunger*, 2014 WL 12599630, at *13.  However, as discussed *supra*, *Goss* involved K-12 students and the Ninth Circuit in *Lucey* did not specifically hold that post-secondary students have a protected property right.  In *Barnes*, the Eleventh Circuit held that the plaintiff, who had been expelled without notice or a hearing, had a protected property right based upon the Georgia Constitution and the university's regulations, which constituted official regulations of the state of Georgia.  *See Barnes*, 669 F.3d at 1303.  The Eleventh Circuit also held that the right was clearly established as of May 2007 because the university's regulations "clearly established that Zaccari could not suspend or expel Barnes without cause—i.e., Barnes violating a provision in the Code."  *Id*. at 1307.

United States District Court
Northern District of California

interest is a liberty interest or arises from a property right (and if the interest stems from property, the courts do not identify the source of that property right).

The Tenth and Eleventh Circuits have found a property interest in higher education created by particular state laws. *See Harris v. Blake*, 798 F.2d 419, 422 (10th Cir. 1986) (property interest created by Colorado law directing that state colleges be open to all residents upon payment of reasonable tuition); *Barnes*, 669 F.3d at 1303 (property interest created by university Board Policy Manual and Student Code of Conduct, which were official regulations created under Georgia constitution).

The Second Circuit has held that a graduate student had a property interest in continuing his education based upon "New York law's recognition of an 'implied contract between [a college or university] and its students' requiring the 'academic institution to act in good faith in its dealing with its students.'" *Branum v. Clark*, 927 F.2d 698, 705 (2d Cir. 1991) (quoting *Olsson v. Board of Higher Education*, 49 N.Y.2d 408, 414 (1980).[11]

The Seventh Circuit has rejected a "stand-alone" property interest in higher education, and indicated that there may be circumstances under which a student could allege a property interest based in contract. In *Charleston v. Bd. of Trustees of Univ. of Ill. at Chicago*, 741 F.3d 769 (7th Cir. 2013), the Seventh Circuit affirmed the dismissal of complaint brought by a former medical student who had been dismissed for unprofessional conduct. The court first noted that "our circuit has rejected the proposition that an individual has a stand-alone property interest in an education at a state university, including a graduate education." *Id.* at 772 (citing *Bissessur v. Ind. Univ. Bd. of Trs.*, 581 F.3d 599, 601 (7th Cir. 2009), and *Williams v. Wendler*, 530 F.3d 584, 589 (7th Cir. 2008)). The Seventh Circuit stated that *Goss* "was inapposite" because the plaintiff's complaint "does not point to an Illinois statute that promises him an education at a state medical school." *Id.* at 772 n.2. The Seventh Circuit framed the question as "whether the student has shown that he has a legally

---

[11] District courts in the Third and Fourth Circuits have also held that students have a property interest based on contract. *See Borrell v. Bloomsburg Univ.*, 955 F. Supp. 2d 390, 402 (M.D. Pa. 2013) (property interest based in Pennsylvania law, which recognizes a contractual relationship between a student and university); *Doe v. Alger*, 228 F. Supp. 3d 713, 729 (W.D. Va. 2016) (property interest based in Virginia law, which recognizes implied-in-fact contracts).

United States District Court
Northern District of California

protected entitlement to his continued education at the university":

> Charleston could establish that he has this legitimate entitlement by pleading the existence of an express or implied contract with the medical school. *See Bissessur*, 581 F.3d at 601. For instance, Charleston could point to an agreement between himself and the school that he would be dismissed only for good cause. *Id*. But as we held in *Bissessur*, it is not enough for a student to merely state that such an implied contract existed. *Id*. at 603. Instead, the student's complaint must be specific about the source of this implied contract, the exact promises the university made to the student, and the promises the student made in return. *See id*. at 603–04.

*Id.* at 773. The court held that the plaintiff had failed to meet that standard because he had only alleged that his dismissal was in violation of the university's student disciplinary policies and university statutes, and had not described any specific promises made to him in the disciplinary policies nor had he identified specific university statutes. *Id*. To the extent the student was claiming that the university failed to follow the procedures laid out in the disciplinary policies, the court stated: "We have rejected similar claims of an interest in contractually-guaranteed university process many times, but we will be clear once more: a plaintiff does not have a federal constitutional right to state-mandated process." *Id*. (internal citation omitted).

Finally, the Fifth Circuit has recognized a liberty interest in higher education. In *Plummer v. University of Houston*, 860 F.3d 710, 774 & n.6 (5th Cir. 2017), the Fifth Circuit held that two students had a liberty interest under the Texas Constitution in their higher education, but noted that "Texas has not recognized a property interest in graduate higher education." *See also Dixon v. Alabama State Bd. of Educ.*, 294 F.2d 150, 157 (5th Cir. 1961) (holding students who had been expelled, without notice or opportunity to be heard, for participating in civil rights lunch counter demonstration had right to due process based on "right to remain at a public institution of higher learning in which the plaintiffs were students in good standing"); *see also Mathai v. Bd. of Supervisors of La. State Univ. & Agric. & Mech. Coll.*, 959 F. Supp. 2d 951, 958 (E.D. La. 2013) (where student faced academic dismissal, court "assume[d] without deciding that plaintiff has a property or liberty interest in her continuing education at LSU"), *aff'd*, 551 F. App'x 101 (5th Cir. 2013).[12]

---

[12] The Eighth Circuit has assumed *arguendo* that a graduate student who was academically dismissed from a program had liberty or property interest. *See Schuler v. Univ. of Minn.*, 788 F.2d 510, 513 n.6 (8th Cir. 1986) ("Assuming the existence of a property or liberty interest, Schuler was

United States District Court
Northern District of California

After careful review of this case law, the Court concludes that plaintiff has not met her burden to show that at the time of the Title IX investigation, she had a clearly established property or liberty interest in her continued enrollment at Sonoma State.  There are no binding Supreme Court or Ninth Circuit cases establishing such a right, and a number of district courts within the Ninth Circuit have recognized that there is a "dearth" of case law on the subject, with several recent decisions finding school officials entitled to qualified immunity.  Looking outside the Ninth Circuit, there is no "robust consensus" holding that students have a protected property or liberty interest in continued enrollment in higher education at a public college or university.  The First and Sixth Circuits have extended *Goss* without articulating the nature of the protected interest; the Tenth and Eleventh Circuits have found a property interest arising out of Colorado and Georgia law; the Second Circuit has held there is a property interest based on New York law's recognition of an implied contract; the Seventh Circuit has rejected a "stand-alone" property interest and indicated that a property interest could be based on contract under specific circumstances; and the Fifth Circuit has found a liberty interest while noting that Texas law does not provide a property interest.  In order to deny defendants' claim of qualified immunity, "existing precedent must have placed the statutory or constitutional question beyond debate."  *White*, 137 S. Ct. at 551.  The Court finds that the unsettled nature of the law in this area does not meet this standard, and accordingly the Court GRANTS defendants' motion to dismiss on qualified immunity grounds.[13]

---

awarded at least as much due process as the Fourteenth Amendment requires.").

[13]  Based upon the Court's research, it appears that cases involving procedural due process claims by post-secondary students accused of misconduct arise with some frequency.  Thus, these issues will continue to be litigated, and the Court would welcome guidance from the Ninth Circuit about the standards governing such claims.  Here, although the Court concludes that plaintiff's lawsuit is barred by qualified immunity, the Court finds plaintiff's allegations unsettling.  Taking the allegations of the complaint as true, plaintiff has raised serious questions about whether she was provided due process during the Title IX investigation and imposition of the "interim remedy" of preventing plaintiff from attending class for 14 months while the inordinately lengthy investigation took place.

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby GRANTS defendants' motion to dismiss because defendants are entitled to qualified immunity.

**IT IS SO ORDERED**.

Dated: February 24, 2020

_____
SUSAN ILLSTON
United States District Judge

United States District Court
Northern District of California

21